**Robert C. MOOR, Jr. and Moor-Law, Inc., a Delaware corporation, Defendants, Appellants,**

v.

**Benito J. LICCIARDELLO, Plaintiff, Appellee.**

Supreme Court of Delaware.

Submitted: April 18, 1983.

Decided: July 1, 1983.

Robert Jacobs (argued), Jacobs & Crumpler, P.A., Wilmington, for defendants, appellants.

James S. Green (argued), Connolly, Bove & Lodge, Wilmington, for plaintiff, appellee.

Before HERRMANN, Chief Justice, McNEILLY and CHRISTIE, Justices.

CHRISTIE, Justice:

This is an appeal from various rulings made in Superior Court in which there was a jury verdict for $16,000.00 for appellee Benito Licciardello. Mr. Licciardello sued appellants, Robert C. Moor, Jr., an individual, and Moor-Law, Inc., a Delaware corporation, in Superior Court, for damages resulting from a gunshot wound to his leg. The wound was inflicted by Mr. Moor, president and sole shareholder of Moor-Law, Inc., on the premises of the Triple Nickel Saloon, a business owned by the corporation. The verdict was rendered against both appellants.

The record reveals that Mr. Licciardello came to the Triple Nickel Saloon after closing hours to set up the instruments for his band, which was to perform at the bar the next evening. After completing that task, he began drinking and gambling with Mr. Moor and several other persons who remained on the premises in the early morning hours. Mr. Moor and one of his employees got into what was an initially playful scuffle with Mr. Licciardello. Mr. Moor then broke free and retreated to a distance of between 15 and 25 feet. At that point, he pulled out a gun and shot the unarmed Mr. Licciardello.

After Mr. Moor presented witnesses who said that Mr. Licciardello had a reputation for violence, he personally testified that he had been in fear of great bodily harm from an advancing and threatening Mr. Licciardello when he fired the shot. Mr. Licciardello, on the other hand, testified that Mr. Moor instigated the scuffle by urging one of his employees to assault Mr. Licciardello, and that, at the time of the shot, he, the victim of the shooting, was turning away from Mr. Moor.

We will address only three of the appellants' arguments on appeal: the contentions that (1) the corporation cannot properly be held liable for Mr. Moor's actions; (2) the trial court abused its discretion in refusing to put certain *voir dire* questions to the jury, and (3) the trial court erred in its instructions as to self-defense. Additional arguments which have been made by the appellants will not be discussed since the resolution of one of the foregoing contentions renders moot those remaining issues.

It is first urged that the corporate defendant was improperly held liable for the act of the individual defendant, Robert C. Moor, Jr.

■ The record reveals, however, that Mr. Licciardello had come to the saloon as a member of a musical group which was un-

der contract to perform in the saloon the following day. The trial judge made a detailed analysis of the facts in the letter opinion and concluded:

> [There was] sufficient evidence from which the jury could conclude that the plaintiff was on the premises for activities related to Moor-Law's business under contractual arrangement with Moor-Law and that Moor as President, sole Director and sole stockholder of Moor-Law, was acting on its behalf on this occasion, that permitting plaintiff and his associates to be on the premises and to be provided with Moor-Law's beverages and to use its facilities was properly and reasonably related to Moor-Law's business and within the scope of employment or other relationship existing between Moor and Moor-Law. Moreover, there was evidence from which the jury could conclude that this was not merely a single occurrence but that activities such as those engaged in on this occasion had occurred in the past. The relationship between plaintiff and Moor-Law was not that of customer and vendor but a contractual or employment relationship. Providing entertainment for the customers was an activity which is not uncommon for a saloon such as this and was not uncommon at this saloon.

See *Licciardello v. Moor;* Del.Super., C.A. No. 79C–MR–108 (Taylor, J., Dec. 8, 1980).

Based on the above analysis and additional observations not repeated here, the trial judge denied the defendants' motions for a judgment notwithstanding the verdict and for a new trial. He was clearly right since the verdict was supported by the evidence, and there was no error of law on the corporate liability issue. *Storey v. Camper,* Del. Supr., 401 A.2d 458 (1979); *Malcolm v. Little,* Del.Supr., 295 A.2d 711, 712 (1972).

▮ Appellants contend that the trial court erred when it refused to put questions to prospective jurors on *voir dire* as to whether the jurors are opposed to "ownership of handguns by the general public" or to the "use of a handgun in self-defense

regardless of the danger the person who uses the handgun is in". The trial judge did not abuse his discretion when he declined to put such questions. *See* Superior Court Civil Rule 47(a); *Chavin v. Cope,* Del.Supr., 243 A.2d 694, 696 (1968).

Finally, appellants contend that the trial court erred in its instruction as to Mr. Moor's right to act in self-defense. The defendants had requested a charge which stressed the subjectivity of the self-defense test, similar to that now in use by Delaware courts in criminal cases. The charge given was as follows:

> Self-defense is an affirmative defense to the plaintiff's claim made by the defendant. The burden of proving this defense by a preponderance of the evidence is on the defendant. Defendant's contention is that his action was taken in self-defense after he was assaulted by plaintiff. When one is assaulted, it is his duty to retire beyond the reach of danger if he can do so without the risk of injury. But if he cannot do so without exposing himself to the threatened violence of his adversary, he may use such force as may be sufficient to repel the attack upon him, but such resistance must be no more than is necessary to protect himself from bodily harm. If his resistance or retaliation be excessive or out of proportion to the provocation or the danger threatened, it will not be justifiable but will be an unlawful assault.

▮ The rule followed in a majority of the states and formerly followed in Delaware as to a claim of self-defense stresses an evaluation of a defendant's conduct from the standpoint of a reasonable man. *See, e.g., Armstrong v. Little,* Del.Super., 54 A. 742 (1903); Prosser, Law of Torts § 19 (4th ed. 1978); Restatement (Second) of Torts §§ 65, 70 (1965); 6 Am.Jur.2d *Assault and Battery* §§ 158–166 (1963). This was the approach in Delaware until 1973. In that year, the General Assembly effected a change in the rule in regard to the justification defense in criminal prosecutions. Under the revised statute, 11 *Del.C.* § 464, a

person's conduct in self-defense must be analyzed from the standpoint of his subjective belief. *See Coleman v. State,* Del. Supr., 320 A.2d 740 (1974).

The provisions of the revised statute, 11 *Del.C.* § 464, state as follows:

§ 464. *Same—Use of force in self-protection.*

(a) The use of force upon or toward another person is justifiable when the defendant believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by the other person on the present occasion.

(b) Except as otherwise provided in subsections (d) and (e) of this section, a person employing protective force may estimate the necessity thereof under the circumstances as he believes them to be when the force is used, without retreating, surrendering possession, doing any other act which he has no legal duty to do or abstaining from any lawful action.

(c) The use of deadly force is justifiable under this section if the defendant believes that such force is necessary to protect himself against death, serious physical injury, kidnapping or sexual intercourse compelled by force or threat.

(d) [Force is not justified to resist lawful or unlawful arrest.]

(e) The use of deadly force is not justifiable under this section if:

(1) The defendant, with the purpose of causing death or serious physical injury, provoked the use of force against himself in the same encounter; or

(2) The defendant knows that he can avoid the necessity of using deadly force with complete safety by retreating, by surrendering possession of a thing to a person asserting a claim of right thereto or by complying with a

demand that he abstain from performing an act which he is not legally obligated to perform except that:

a. The defendant is not obliged to retreat in or from his dwelling; and

b. The defendant is not obliged to retreat in or from his place of work, unless he was the initial aggressor; and

c. A public officer justified in using force in the performance of his duties, or a person justified in using force in his assistance or a person justified in using force in making an arrest or preventing an escape, need not desist from efforts to perform the duty or make the arrest or prevent the escape because of resistance or threatened resistance by or on behalf of the person against whom the action is directed.

The provisions of 11 *Del.C.* § 470(d), the definition section relating to the defense of justification, include this statement: "[p]urposely firing a firearm in the direction of another person . . . constitutes deadly force . . . ." An appraisal from the reasonable man standpoint is retained only as a factor in evaluating the credibility of the defendant's belief. *See* 11 *Del.C.* § 307(a).[1] *See also Delaware Criminal Code with Commentary* § 307(a) at 67 (1973) and *Coleman v. State,* 320 A.2d at 743. The legislature also removed from the law the rule that one must retreat before using deadly force if the assault occurs in the defendant's place of work, 11 *Del.C.* § 464(e)(2)b.

In the *Delaware Criminal Code with Commentary* at 117–18, the changes that this statute made were recognized and discussed:

*The Code Provision*

Section 464 sets generally the permissible limits on the use of force in self-pro-

---

1. 11 *Del.C.* § 307. *Jury inference of defendant's intention, recklessness, knowledge or belief.*

(a) The defendant's intention, recklessness, knowledge or belief at the time of the offense for which he is charged may be inferred by the jury from the circumstances surrounding the

act he is alleged to have done. In making the inference permitted by this section, the jury may consider whether a reasonable man in the defendant's circumstances at the time of the offense would have had or lacked the requisite intention, recklessness, knowledge or belief.

tection. Subsection (1) permits the use of force against another person only when the actor believes the force is immediately necessary for the purpose of protecting himself against that other's use of force on the present occasion. The actor must show that he did believe that force was necessary and that his response was an immediate reaction to a present necessity. Note, however, that a reasonable belief is not required. All that is relevant to the actor's guilt is that he did honestly believe it necessary to use force in his own defense .... Note that this section is consistent with § 441, relating to mistake of fact, which does not require reasonableness. Of course, if the actor's reaction deviates too substantially from the norm, he runs the risk that the jury will not believe him. But if he honestly believes he needs to act in self-defense, the criminal law will be powerless to stop him, no matter how unreasonable his belief. It is best, then, that the official statement of the law be realistic.

Subsection (2) sets the permissible limits of the defendant's reaction. He need not retreat, unless subsection (5) requires him to do so. He may also estimate the amount of force required by the circumstances as he believes them to be; he is not required to be objective, since the amount of time available for deliberation is obviously limited.

The rules change substantially when deadly force is used. Subsection (3) permits deadly force in response to deadly force by the other party, and to prevent serious physical injury, kidnapping, or sexual intercourse compelled by force or threat. However, the actor may not use deadly force if he was the initial aggressor and had the purpose of causing death or serious physical injury. Nor may he use deadly force if it is completely safe to retreat. Present Delaware law requires

retreat, if safe, but trial judges' instructions have made it plain that it is not usually safe to retreat if deadly force is threatened by an opponent. Subsection (5) is in accord, since it does not require a retreat which cannot be made in complete safety. Moreover, retreat is unnecessary if the actor is in his own dwelling, regardless of whether he was the initial aggressor. Unless the actor was the initial aggressor, he need not retreat from his place of work. A person should feel free to stay wherever his job requires him to be, and should not be forced to flee by an aggressor ....

■ The substance of a claim of self-defense is the same in both criminal and civil litigation; only the burden of proof differs. *See Holmes v. Holmes,* Tex.Civ.App., 588 S.W.2d 674, 675 (1979). Since the legislature has enacted a change in the law in regard to self-defense as it may come up in criminal proceedings, a corresponding change was effected in regard to civil claims where self-defense is a factor.[2] We find that the subjective test as defined in 11 *Del.C.* § 464 must now be applied to any claim of self-defense.

■ The charge in this case was incomplete as it failed to set forth the subjective standard by which the jury should have been told to evaluate the defendant's action. The charge also was erroneous in that it failed to indicate that under some circumstances one may not have a duty to retreat if he is attacked in his place of business. We cannot say that these errors were harmless and, therefore, we must REVERSE the decision of the Superior Court and REMAND this case for further proceedings consistent with this opinion.

---

**2.** In 11 *Del.C.* § 466(d) regarding use of force for the protection of property, the legislature went further than applying the same test to civil cases, and provided that "[w]here a person has used force for the protection of proper-

ty and has not been convicted for any crime or offense connected with the use of force, such person shall not be liable for damages or be otherwise civilly liable to the one against whom such force be used."