Rachel **HUDSON**, Defendant Below, Appellant,

v.

**STATE FARM MUTUAL INSURANCE COMPANY**, Plaintiff Below, Appellee.

Supreme Court of Delaware.

Submitted: Oct. 24, 1989.
Decided: Jan. 18, 1990.
Rehearing Denied Feb. 5, 1990.

Robert C. Wolhar, Jr., Wolhar & Gill, P.A., Georgetown, for appellant Rachel Hudson.

Anne L. Naczi, Tybout, Redfearn, Casarino & Pell, Wilmington, for appellee State Farm Mut. Ins. Co.

Before, CHRISTIE, C.J., and MOORE and WALSH, JJ.

MOORE, Justice:

We accepted this interlocutory appeal from the Superior Court to consider whether an automobile insurer must defend and indemnify its insured, who intentionally or recklessly caused a collision that injured an innocent passenger riding in the vehicle with the insured. The appellant, Rachel Hudson, claims that she was injured while a passenger in a truck driven by her former husband, Louis C. Hudson, who drove off the road in an attempt to injure her. State Farm had issued an automobile policy to Mr. Hudson providing coverage for personal injuries "caused by accident". State Farm denied coverage, and filed this declaratory judgment action, contending that the collision, when viewed from the perspective of Mr. Hudson, the insured, was not accidental. The Superior Court agreed and granted summary judgment in favor of State Farm.

This is an issue of first impression in Delaware. As a matter of public policy under our motor vehicle financial responsibility laws, we conclude that the phrase "caused by accident" in State Farm's policy must be interpreted from the standpoint of

the injured party rather than that of the insured. Accordingly, we reverse and direct that a declaratory judgment be entered in favor of the appellant, Rachel Hudson.

I.

Mrs. Hudson contends that while riding in Mr. Hudson's truck, and during the course of an argument, he intentionally and recklessly drove off the road and collided with a telephone pole in an attempt to injure or kill Mrs. Hudson. Her back was seriously injured. She further claims that the injury was exacerbated when Mr. Hudson first tried to move her, and then denied her prompt medical attention.

Mr. Hudson was subsequently charged with and convicted in the Superior Court of first degree assault. *State v. Hudson*, Del. Super., Cr.A. No. 86–07–0128, Lee, J. (Oct. 28, 1986). At the criminal trial the jury was instructed that to convict Mr. Hudson of assault, they had to find that he "was aware and consciously disregarded a substantial and unjustifiable risk that his conduct created a substantial risk of death and could cause serious physical injury to another person [constituting] ... a gross deviation from the standard of conduct that a reasonable person would have observed in the situation."

Based on the jury's verdict, State Farm filed this declaratory judgment action and moved for summary judgment. State Farm claimed that the policy provided coverage only for injuries that were "caused by accident".[1] Since the jury found Mr. Hudson guilty of intentionally or recklessly causing Mrs. Hudson's injuries, State Farm argued that it was not required to indemnify Mr. Hudson on grounds of collateral estoppel. The Superior Court agreed and granted State Farm's motion for summary

1. The policy specifically provided:
   We will:
   1. pay damages which an insured becomes legally liable to pay because of:
   a bodily injury to others, and
   caused by accident resulting from the ownership, maintenance or use of your car ...
   2. defend any suit against an insured for such damages....

Significantly, the policy did not contain any exclusion for intentional or reckless conduct. State Farm's denial of coverage, therefore, is based entirely on the claim that the quoted portions of the policy do not extend coverage to intentional or reckless acts.

judgment, implicitly holding that the policy phrase "caused by accident" must be viewed from the standpoint of the insured driver.

## II.

■ A court's interpretation of an insurance policy is a determination of law. *Reardon v. Exchange Furniture Store*, Del.Supr., 188 A. 704 (1936). We review questions of law de novo. *Fiduciary Trust Co. v. Fiduciary Trust Co.*, Del. Supr., 445 A.2d 927 (1982). Our standard of review is whether the trial court erred in formulating or applying legal precepts. *Rohner v. Niemann*, Del.Supr., 380 A.2d 549, 552 (1977).

Mrs. Hudson presents four arguments to support her claim that the phrase "caused by accident" in her former husband's insurance policy should be interpreted from her standpoint rather than his. She admits that no Delaware cases have directly addressed the issue, but cites numerous cases from other jurisdictions that support her position. Second, she argues that viewing the policy language from the perspective of the injured party is consistent with Delaware interpretations of the term "accident" in cases involving life insurance policies. Third, she suggests that because the term "accident" is susceptible of different interpretations it is ambiguous and should be read in her favor. Finally, she argues that the public policy of our compulsory liability insurance laws favors compensating those injured in automobile accidents. We will consider her arguments *seriatim*.

## A.

Mrs. Hudson's first argument is based on cases decided in other jurisdictions. A majority of states have held that whether an assault constitutes an "accident" within the limits of coverage must be determined from the standpoint of the injured party rather than the insured. Annotation, *Lia-*

*bility Insurance: Assault As An "Accident", or Injuries Therefrom As "Accidentally" Sustained, Within Coverage Clause*, 72 A.L.R.3d 1090, 1100–03 (1976 & Supp.1989) (citing cases from twelve jurisdictions: Georgia, Illinois, Louisiana, Michigan, Mississippi, Nebraska, New Hampshire,[2] New Jersey, North Dakota, Washington, West Virginia and Wisconsin) [hereinafter Annotation]. Mrs. Hudson argues that we should adopt the majority rule, yet many of those cases arose from bodily injuries that were intentionally caused by employees of the insured rather than by the insured himself. *See* Annotation, at 1100–03. They have less precedential value here because Mrs. Hudson's injuries were directly inflicted by the insured. Moreover, at least five jurisdictions have adopted the view that whether injuries were "caused by accident" must be determined from the standpoint of the insured. Annotation, at 1103–04 (citing cases from Maryland, Massachusetts, New York, North Carolina and Ohio). Most of those cases involved injuries directly inflicted by the insured, and they rely on the well-established common law principle that an insured should not be allowed to profit, by way of indemnity, from the consequences of his own wrongdoing. Annotation, at 1098. However, given the circumstances here, and the public policy of our law, we need not rest our decision on either the so-called majority or minority views.

In Mrs. Hudson's second argument she urges us to adopt the same definition of "accident" in liability insurance cases that Delaware courts have applied to life insurance policies. *See Maneval v. Lutheran Bhd.*, Del.Super., 281 A.2d 502, 506 (1971) (life insurance beneficiary allowed to recover for death caused by intentional act). That interpretation has been adopted in at least one other jurisdiction. *See State Farm Mut. Auto. Ins. Co. v. Coon*, 46 Mich.App. 503, 208 N.W.2d 532 (1973) (applying definition of accident in life insur-

---

**2.** New Hampshire has recently taken a different approach, at least in cases involving sexual assaults. *Vermont Mut. Ins. Co. v. Malcolm*, 128 N.H. 521, 517 A.2d 800 (1986) (sexual assault committed by insured was not an "occurrence" within meaning of homeowner's liability policy because policy conditioned coverage on fortuitous character of insured's act whereas assaults are inherently injurious).

ance cases to liability insurance case). On the other hand, State Farm argues that awarding life insurance benefits to the victim of an intentional killing is fundamentally different from a decision to defend and indemnify one who intentionally inflicts harm on another. Most life insurance policies contain a specific exclusion for suicide. Moreover, at least one Delaware case supports the proposition that a known violation of criminal law will void an insurer's liability under an accidental death policy. *See Szymanska v. Equitable Life Ins. Co.*, 37 Del. 272, 183 A. 309, 312–13 (1936). Under these circumstances we think it is preferable to base our decision on other grounds.

Mrs. Hudson's third argument is that State Farm's policy is ambiguous because the phrase "caused by accident" is susceptible of different interpretations depending on whose viewpoint is adopted. To the extent that this phrase is ambiguous, the ambiguity must be resolved against the insurer who drafted the policy. *Hallowell v. State Farm Mut. Auto. Ins. Co.*, Del. Supr., 443 A.2d 925 (1982). However, we need not address this point.

## B.

■ We decide this case as a matter of public policy based on Delaware's enactment of motor vehicle financial responsibility laws. 21 *Del.C.* Chs. 21 & 29. An owner of a motor vehicle registered in Delaware is required to have insurance providing "[i]ndemnity from legal liability for bodily injury, death or property damage arising out of ownership, maintenance or use of the vehicle." 21 *Del.C.* § 2118(a)(1). A motor vehicle liability policy must "insure the person named [in the policy] ... against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such vehicle." 21 *Del.C.* § 2902(b)(2). The insurance coverage, however, "may be subject to conditions and exclusions customary to the field of liability ... insurance and not inconsistent with the requirements of this section." 21 *Del.C.* § 2118(e).

In recent decisions we have recognized that the fundamental purpose of Dela-

ware's financial responsibility laws is to protect and compensate all persons injured in automobile accidents. *Bass v. Horizon Assurance Co.*, Del.Supr., 562 A.2d 1194 at 1196 (1989); *State Farm Mut. Auto. Ins. Co. v. Wagamon*, Del.Supr., 541 A.2d 557, 560 (1988). *Cf. Hamon v. Richards*, Del. Super., 190 A.2d 612 (1963). In *Wagamon* we held that an automobile policy that excluded liability coverage for certain intrafamily claims was contrary to public policy. 541 A.2d at 561. Similarly, in *Bass* we held that an insurance policy exclusion which denied personal injury protection (PIP) to the insured based on his conviction for driving under the influence (DUI) was incompatible with Delaware's "no-fault" law. At 1194 ("The primary objective of [the no-fault law] is to *allow an insured to recover regardless of fault*"). Those decisions are equally applicable here. We are just as unwilling to allow implied exclusions for reckless or intentional misconduct while operating a motor vehicle as we were in *Wagamon* and *Bass* to allow express exclusions for other family members or drunk driving. The public policy remains the same whether the exclusions are express or implied. Indeed, the result is less severe in this case than in *Wagamon* and *Bass* where we overturned express policy exclusions.

## III.

■ Our interpretation of the phrase "caused by accident" in terms of the injured party's viewpoint, is contrary to the established common law rule that an insured should not be allowed to profit, by way of indemnity, from the consequences of his own wrongdoing. That long-standing policy has been superseded by Delaware's financial responsibility law which is intended to protect the victims of automobile accidents in all situations. We follow other jurisdictions that have acknowledged a shift in public policy with respect to automobile liability insurance. *State Farm Fire & Cas. Co. v. Tringali*, 686 F.2d 821 (9th Cir.1982) (adoption of a compulsory scheme of automobile liability insurance strongly suggests legislative intent that there be no exclusion of intentional acts of insured and that courts should read the

terms "accident" or "accidental" from the viewpoint of the injured persons); *Nationwide Mut. Ins. Co. v. Roberts*, 261 N.C. 285, 134 S.E.2d 654 (1964) (assigned risk policy providing only the minimum coverage required by statute must be construed in connection with public policy embodied in financial responsibility act); *Hartford Accident & Indem. Co. v. Wolbarst*, 95 N.H. 40, 57 A.2d 151 (1948) (rights of an injured party are not simply derived from those of the insured, but to some extent are independent of those rights, and gained from financial responsibility act). *See also generally* Annotation, at 1111–13.

The issues of unlawful conduct, versus the protection afforded injured persons under our financial responsibility law, are separate and distinct. Those who violate the law remain subject to criminal prosecution, while those who are injured may look to the financial responsibility law for economic protection.

Accordingly, we REVERSE the judgment of the Superior Court and REMAND for further proceedings consistent with this opinion.