**Eugene CAMAC, Plaintiff,**

v.

**Donald E. HALL, Jr., and Pockets, Ltd., a Delaware Corporation, Defendants.**

**NATIONWIDE MUTUAL INSURANCE COMPANY, Plaintiff,**

v.

**Donald E. HALL, Jr., Eugene Camac and Pockets, Ltd., a Delaware Corporation, Defendants.**

Civ. A. Nos. 93C–04–075–WTQ, 93C–08–214–WTQ.

Superior Court of Delaware, New Castle County.

Submitted: Oct. 1, 1996.
Decided: Oct. 7, 1996.

William X. Moore, Jr., Roeberg, Moore & Associates, Wilmington, for Eugene Camac.

Paul M. Lukoff, Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for Nationwide Insurance Company.

Elwood T. Eveland, Woloshin, Tennenbaum & Natalie, Wilmington, for Donald E. Hall, Jr.

Robert J. Leoni, Mason, Ketterman & Morgan, Newark, for Donald E. Hall, Jr. (through Nationwide Insurance Company).

QUILLEN, Judge.

The question before the Court on this Motion for Summary Judgment is whether Nationwide Mutual Insurance Company is entitled to declaratory relief from the Court to the effect that its insurance policy with Donald E. Hall, Jr. does not require it to defend or indemnify him in the underlying action. For the reasons herein stated, Nationwide's Motion is GRANTED.

1. Camac, Hall, and Pockets, Ltd. agreed to a stipulation of dismissal as to Pockets, Ltd. in

**I.**

There are two civil actions before the Court on this Motion. The first is the underlying tort action, in which Eugene Camac ("Camac") seeks to recover compensatory damages from Donald E. Hall, Jr. ("Hall") for an assault that occurred in the men's restroom at a bar, Pockets, on August 5, 1992.[1] There had been some ill feelings between the two a year previous after Hall had turned Camac in for a union work violation when the two worked together on a job at General Motors. Aside from "bad looks" and the "cold shoulder," nothing more ever came of it.

On the night of the assault, both Hall and Camac were at Pockets. Hall's brother pointed Camac out in the bar and told Hall that Camac was a regular there. Hall and Camac did not exchange any potentially provocative glances or words in the main gathering area of the bar. Sometime during the evening, Camac went to restroom. Hall, preparing to leave the bar, went into the restroom shortly thereafter. Hall saw Camac in *the restroom. Even under the evidence* most favorable to Hall, Camac was at the urinal at this time, and, having just finished using it, was beginning to turn toward the door. Without waiting or warning, Hall proceeded to strike Camac across the jaw, either from behind or from the side. Camac was floored by the blow. Camac apparently did not recognize Hall before the attack, nor did he make any movements or speak any words, threatening or otherwise, toward Hall at any time prior to Hall striking Camac. Hall was charged with assault in the second degree and ultimately pled guilty to assault in the third degree.

In the second action, Nationwide Mutual Insurance Company ("Nationwide") seeks a declaratory judgment that it is not required to defend or indemnify Hall. Hall has a homeowner's policy with Nationwide. Under the policy's section entitled "Liability Coverage," Nationwide promises to both defend and indemnify the insured for any damages the insured is legally obligated to pay due to

June 1994.

an "occurrence," as well as necessary medical expenses incurred for up to three years after the occurrence. Occurrence is defined as bodily injury or property damage that results from "one accident" or "continuous or repeated exposure to the same general condition." The "Exclusions" section of the policy, however, states that the foregoing sections do not apply to bodily injury or property damage "which is expected or intended by the insured." Nationwide claims in its Motion for Summary Judgment that it is under no duty to defend and indemnify Hall because it is excused from doing so under the intentional conduct exclusion clause of the insurance policy.

## II.

■ When considering a motion for summary judgment under Superior Court Civil Rule 56, the Court's function is to examine the record to determine whether genuine issues of material fact exist. *Oliver B. Cannon & Sons, Inc. v. Dorr–Oliver, Inc.*, Del.Super., 312 A.2d 322, 325 (1973). If, after viewing the record in a light most favorable to the non-moving party, the Court finds there are no genuine issues of material fact, summary judgment is appropriate. *Id.* The Court's decision must be based only on the record presented, including all pleadings, affidavits, depositions, admissions, and answers to interrogatories, not on what evidence is "potentially possible." *Rochester v. Katalan*, Del.Supr., 320 A.2d 704 (1974). All reasonable inferences must be drawn in favor of the non-moving party. *Sweetman v. Strescon Indus.*, Del.Super., 389 A.2d 1319 (1978). Summary judgment will not be granted if the record indicates that a material fact is in dispute or if it seems desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances. *Ebersole v. Lowengrub*, Del. Supr., 180 A.2d 467 (1962).

## III.

In the present matter, the Court considers three related issues. First, whether there is a genuine issue of material fact that the incident of August 5, 1992 was an "accident," such as to bring Camac's injuries and medical expenses within the coverage of Hall's insurance policy. Second, whether there is a genuine issue of material fact that Hall's conduct was intentional, as the term is understood under Delaware law. Third, whether there is a genuine issue of material fact that Hall's conduct qualifies as self-defense, and, if so, how Delaware law treats self-defense in relation to the intentional conduct exclusion provisions in insurance policies. Due to the especially fact-sensitive nature of these issues, the Court will make several citations to the record in order to provide a clearer understanding of the rationale underlying this opinion.

■ Hall's homeowner policy does not define "accident." A prior decision of the Court, however, defines "accident" as an event not anticipated or foreseen by the victim, or an outcome not intended by the insured. *State Farm Fire & Cas. Co. v. Hackendorn*, Del.Super., 605 A.2d 3, 7–9 (1991) (looking to case law in other jurisdictions). *Black's Law Dictionary* defines accident in the insurance contract context to mean "an event happening without any human agency, or, if happening through such agency, an event which, under circumstances, is unusual and not expected by the person to whom it happens." *Black's Law Dictionary* 15 (6th ed. 1990). Whether what occurred was an accident is generally taken from the viewpoint of the victim, while also examining the insured's conduct. *Hackendorn*, 605 A.2d at 7. Camac claims that the attack was without provocation or warning, an unusual and unanticipated event within the meaning of "accident." There is also some evidence in the record that Camac was aware of someone for a very brief moment before Hall struck him, but surely there can be no reasonable doubt that this event qualifies as an accident. The plaintiff was slugged by the defendant while at the urinal on personal business. It is not usual or expected to be struck at such a time.

## IV.

■ There remains the issue of whether Hall's conduct was intentional or the resulting injuries expected, so as to bring the case within the exclusion provision of his policy.

Delaware law recognizes the validity of these exclusion provisions in homeowner insurance policies. *See, e.g., Farmer in the Dell Enterprises v. Farmers Mut. Ins. Co.,* Del.Supr., 514 A.2d 1097 (1986); *State Farm Fire and Cas. Co. v. Twyman,* Del.Super., C.A. No. 86–DE–4, 1988 WL 146531 (Kent), Ridgely, J. (Nov. 30, 1988) (LETTER).[2]

■ The homeowner policy in question creates two possible and distinct grounds for exclusion. It clearly states that liability coverage does not apply to bodily injury or property damage which is expected *or* intended by the insured. The Court must give effect to all provisions in a contract. *E.I. duPont de Nemours & Co. v. Shell Oil Co.,* Del.Supr., 498 A.2d 1108, 1114 (1985). Expected and intended are not redundant terms and necessarily create separate circumstances under which coverage is excluded. *See Farmer in the Dell Enterprises,* 514 A.2d at 1100; *E.I. duPont de Nemours & Co. v. Admiral Ins. Co.,* Del.Super., C.A. No. 89C–AU–99, 1996 WL 111133, Steele, V.C. (Feb. 22, 1996) (MEMORANDUM); *New Castle County v. Hartford Accident & Indem. Co.,* D.Del., 685 F.Supp. 1321, 1329 (1988) (recognizing that the *Farmer in the Dell Enterprises* Court seemed to acknowledge two distinct grounds).

The Delaware Supreme Court has created a three factor test for determining when application of the exclusion is permitted.

> We believe the better rule to be that which permits application of the exclusion upon the showing of an intentional act coupled with an intent to cause some injury or damage so long as it is reasonably foreseeable that the damage which actually followed would in fact occur.... This standard simply applies the accepted principle of tort law that where there is intentionally tortious conduct, ordinary consequences as well as specifically intended consequences of that conduct are deemed intended.

*Farmer in the Dell Enterprises,* 514 A.2d at 1099. Put another way, "[w]here the tortfeasor clearly lacks the intent to inflict any damage or injury, and it is not foreseeable that damage will occur, the exclusion will not apply." *Id.* at 1100.

■ After a review of the entire record, the Court in this case believes that no genuine issue of material fact exists. There is no dispute that Hall's conduct was intentional.[3] When the act that causes the injury is intentional, the specific issue facing the Court is how to determine whether that resulting injury is reasonably foreseeable. *E.I. duPont de Nemours & Co. v. Admiral Ins. Co.,* C.A.

2. Camac, in his brief in opposition to Nationwide's Motion, urges the Court to invalidate the intentional conduct exclusion provision in Camac's homeowner policy on what appear to be public policy grounds. Camac cites *Hudson v. State Farm Mut. Ins. Co.,* Del.Supr., 569 A.2d 1168 (1990), for the proposition that Delaware law prohibits such provisions in automobile insurance policies. He urges the Court to extend such prohibition to homeowner policies. The Court declines to do so for two reasons. First, the Delaware Supreme Court allowed intentional conduct exclusion provisions in homeowner policies prior to *Hudson.* If the Supreme Court intended that its decision in *Hudson* affect homeowners policies, it would have so stated. This Court is bound by the Supreme Court's decision in *Farmer in the Dell Enterprises.* Second, the *Hudson* Court decided the case as "a matter of public policy based on Delaware's enactment of motor vehicle financial responsibility laws." *Id.* at 1171. These laws are intended to ensure that all persons injured in automobile accidents receive protection and compensation. Public policy demands that those protections take precedence over intentional conduct exclusions. Delaware law enacts no such comprehen-

sive protection scheme for persons injured in accidents covered under homeowner policies. The policy considerations are quite different; the present case is a more rare "accident" than is the automobile experience. *Hudson* is inapplicable.

3. Hall himself testifies that he intentionally struck Camac across the face, and the record is replete with his own statements to that effect. Hall's Plea Agreement in his criminal action states that he agreed to plead guilty to a charge of "assault in the 3rd degree (reckless)." *State v. Hall,* Del.Super., Cr.A. No. IN92–08–1199, Gebelein, J., February 17, 1993, Plea Agrmt. at Dkt. No. 3. When acting without a deadly weapon or dangerous instrument, a person is guilty of assault in the third degree when he intentionally or recklessly causes physical injury to another. 11 *Del.C.* § 611. Hall simply agreed to plead that he recklessly caused physical injury. It does not in any way prevent the Court, in light of Hall's subsequent and numerous statements that he intentionally struck Camac, from finding, as a matter of law in this civil action, that he acted with intent.

No. 89C–AU–99 at 9–10. As a guide, "it is the unintentional, but foreseeable, scope of the intentional act which controls." *Farmer in the Dell Enterprises,* 514 A.2d at 1100. Here, Hall intentionally hit Camac, and the contact produced by that intentional. act is "some injury." It is a sophistication beyond this Judge's capacity to say that the intentional flooring of a victim in somewhat helpless circumstances in the men's room of a bar intends no injury or damage.

There is also no genuine issue of material fact as to whether it was reasonably foreseeable that the damage which actually followed could in fact occur.[4] *Farmer in the Dell,* 514 A.2d at 1099. An event or result is reasonably foreseeable if a defendant should have recognized the risk of injury under the circumstances. When Hall intentionally struck Camac in the aforementioned manner, the physical injuries which in fact occurred were reasonably foreseeable. That the injuries might be more extensive than Hall intended is irrelevant. When a person clearly intends the act that causes the other person's injuries, and the resulting injuries are reasonably foreseeable, Delaware law clearly states that a court must give effect to liability coverage exclusion clauses in homeowner insurance contracts. Summary judgment is appropriate on this issue.

## V.

One final matter that must be addressed is the relation of Hall's claim of self-defense to the foregoing analysis. The applicability of the self-defense claim to Nationwide's Motion stems from the fact that some jurisdictions hold that an act done in self-defense is not an intentional injury within the meaning of liability coverage exclusion clauses in insurance contracts. *See* Annotation, *"Acts in self-defense as within provision of liability insurance policy expressly excluding coverage for damage or injury intended or expected by insured,"* 34 A.L.R.4th 761 (1984). Delaware law is silent on the matter. Were the Court to rule on the issue, it would do so as a matter of first impression. This Court is inclined to view an established self-defense claim in this context as foreclosing a personal injury intended by the insured. The Court, however, finds it unnecessary to reach the issue. Even assuming, *arguendo,* that Delaware law would recognize self-defense as an exception to the exclusion, Hall has failed to present any credible facts that could support a theory of self-defense. A decision on whether Delaware law recognizes a self-defense exception should await a case where a claim of self-defense is supported by credible evidence and could materially affect the outcome.

The basic thrust of Hall's claim is that he struck Camac first because he expected some retaliation from Camac due to the work-related incident they had one year earlier.[5] It being in the interest of both to keep Nationwide in the case, both the plaintiff (Camac) and the defendant (Hall) in the underlying tort action maintain that this self-defense theory presents issues of fact for a jury, namely, whose version of the facts is correct. Nevertheless, the Court finds that summary judgment is appropriate. The relevant statute setting out the circumstances under which force may be used in self-defense is 11 *Del.C.* § 464. Although this is the

---

**4.** In his brief, Hall mistakenly suggests that "[i]t is also a jury question as to whether ... he intended to inflict the harm that actually occurred." This is an incorrect statement of the law. Hall need not intend the harm that actually occurs. The actual harm need only be reasonably foreseeable. *See Farmer in the Dell Enterprises,* 514 A.2d at 1099.

**5.** Notwithstanding that no words had been exchanged by the two before the hit, or that neither party had seen the other in more than eight months, this testimony is a concise recitation of Hall's grounds for. believing self-defense necessary:

Q: What happened when you went to the bathroom?

A: Then I went to the bathroom I opened the door and seen Gene Camac. And he, when I opened the door he turned around and glanced at me and right then and there I thought, well, we're going to have a fight because he remembers me. I remember him. And I hit him first. He turned around and looked at me and I felt that with him being in there and being a regular and him being mad at me or having differences with me and differences before I felt that my safety was in danger and we were going to have a fight. And he, when he looked at me I went to punch him. I hit him first. (Hall Dep. at 14–15).

self-defense provision of the criminal code, its substantive provisions also apply in the civil context. *Moor v. Licciardello,* Del.Supr., 463 A.2d 268, 272 (1983) (noting that it is the burden of proof, and not the substance of a self-defense claim, that differs in criminal and civil litigation). The statute states, in pertinent part, the following:

(a) The use of force upon or toward another person is justifiable when the defendant believes that such force is *immediately* necessary for the purpose of protecting the defendant against the use of unlawful force by the other person on the *present* occasion.

(b) [ ...] a person employing protective force may estimate the necessity thereof under the circumstances as the person believes them to be when the force is used, without retreating, surrendering possession, doing any other act which the person has no legal duty to do or abstaining from any lawful action.

11 *Del.C.* § 4643(a)–(b) (emphasis added). The standard by which the use of force in self-defense is justified is a subjective standard, judged by reference to whether the defendant "did honestly believe it necessary to use force in his own defense." *Moor,* 463 A.2d at 272. *See also Tice v. State,* Del. Supr., 624 A.2d 399, 402 (1993).[6]

While it is important to keep in mind that self-defense under our statute is not judged by reference to that monolithic construct of the common law, the reasonable person, it must also be remembered that in order for a

court to permit a jury to consider a claim of self-defense, the defendant must present credible evidence supporting the defense. 11 *Del.C.* § 303(a). In other words, the evidence must be such that a reasonable jury could find that the defendant acted in self-defense. No such evidence is presented in this case. In order to explain most clearly the reasons why, a brief review of the applicable case law regarding self-defense is appropriate.

First, the defendant cannot be the aggressor. "A defendant must present credible evidence that the victim was the aggressor to successfully assert a claim of self-defense." *Fetters v. State,* Del.Supr., 436 A.2d 796, 798 (1981). *See also Marvel v. State,* Del.Supr., 587 A.2d 454 (1991). Second, the danger of harm to the defendant must be imminent and the accompanying response must be immediately necessary. *Tice v. State,* Del.Supr., 624 A.2d 399, 402 (1993). Third, there must be some act on the part of the victim that gave the defendant cause for fear. "No looks or gestures, however insulting, and no words, however offensive they may be, can amount in law to a provocation sufficient to justify an assault." *State v. Stevenson,* Del. Oyer. & Term., 188 A. 750, 751 (1936). *See also State v. Roe,* Del.Gen.Sess., 103 A. 16 (1918).

Applying these requirements, the Court elicits several facts from Hall's own statements. Hall does not think Camac recognized him before he hit him.[7] Camac neither made any movement nor said any words that caused Hall to think that he was in danger.[8]

---

**6.** The Court notes that Hall's supporting brief may misstate the applicable seminal standard against himself, suggesting that the question is whether Hall was negligent in his judgment. Negligence never enters the statutory equation, so long as a defendant's belief that force was necessary is honestly held. It could be argued that the civil standard should require a reasonable belief and this Court is not certain that *Moor v. Licciardello* would foreclose such an argument. But, if the defendant in this case cannot satisfy the subjective intent test in making a self-defense claim, he cannot do any better if reasonableness is an added criterion.

**7.** There are several references to this in the transcript of Hall's deposition. *See* Hall Dep. at 16, 32. Camac's deposition testimony supports this:

Q: Did you know who Mr. Hall was?
A: I recognized him, but at that point, where I recognized him from, I didn't know. (Camac Dep. at 11).

**8.** Hall testifies that Camac never made a threatening move toward him:

Q: What move did Mr. Camac make that made you think you were going to be hit?
A: I didn't say that he made a movement that made me think I was going to be hit. I stated that I thought when I went in the bathroom prior to leaving the bar, I didn't know he was there and when he turned around I saw him. I just took it for granted that me and him were going to have a fight. (Hall Dep. at 33).

In Hall's own words, he "just took it for granted" that they would eventually fight and he struck Camac before Camac said a single word. There was only a split second between the time Hall walked into the bathroom, recognized Camac, and hit him.[9]

■ Were the Court to allow these undisputed facts to sustain an argument of self-defense, it would be tantamount to turning the Delaware law of self-defense on its ear. There is not one speck of evidence that Camac did anything that evening, or at any time in the past, to give Hall any credible reason to fear for his safety on that present occasion. There is no evidence that Camac was the initial aggressor. On the evidence most favorable to Hall, Camac had just finished using the urinal and for all intents and purposes was defenseless at the moment of attack.[10] Camac did not recognize Hall, did not move toward him, did not threaten him, and did not even speak to him. Additionally, Delaware law demands that the defendant show that not only did he subjectively believe that force was necessary, but "that his response was an immediate reaction to a present necessity." *Moor*, 463 A.2d at 272. It would be outrageous to hold that the fact that Camac had friends at the bar constitutes present necessity in the absence of any evidence that Camac or his friends posed a present danger to Hall. Furthermore, if, under Delaware law, looks and gestures are not justification when they are contemporaneous in time to the assault, then they certainly are not when they are remote in time, in this case one year prior. Suffice it to say

that the Court is certain that these facts were not what the Delaware Supreme Court had in mind when it said "present necessity," or what the Delaware General Assembly had in mind when it said "immediately necessary" and "present occasion."

The Court has been unable to find a single case with facts as weak as those here in which a claim of self-defense was held factually viable. Testimony that Camac gave him "bad looks" and the "cold shoulder" after their work dispute, that Hall's brother told him that Camac spends a lot of time at that bar, and that a lot of Camac's friends were there is not even remotely close to presenting credible evidence under 11 *Del.C.* § 303. The Court is aware that the standard of credible evidence does not require conclusive proof. It does, however, require that the evidence be "natural, reasonable and probable in view of the transaction which it describes." *Indiana Metal Prods. v. N.L.R.B.*, 6th Cir., 442 F.2d 46, 52 (1971). In common parlance, it might be called the "straight face" test. The evidence presented here, even viewed as favorably as possible toward the non-movants, does not meet that standard or pass that test. No reasonable jury could find that Hall acted in self-defense. There is no genuine issue of material fact. Super.Ct.Civ.R. 56.

## VI.

Based on a detailed examination of both law and fact, the Court finds that it has no choice but to grant summary judgment in

---

9. Hall testifies that he waited for about one second before striking Camac:

> Q: And you said that the amount of time that elapsed was a split second?
> A: Within a minute.
> Q: There's a difference between an [sic] split second and a minute, sir.
> A: When I walked in and hit him—you mean—excuse me. Okay. Yeah.
> Q: A split second?
> A: Yes. We were a few feet apart. (Hall Dep. at 32).

10. The following testimony from Camac is even more graphic:

> Q: Did you have anything in your hands when you were standing at the urinal?
> A: Only the normal.
> Q: No weapons?
> A: No ma'am.
> Q: No pieces of wood; no knives?
> A: No ma'am.
> [ ... ]
> Q: [D]id you get yourself zipped up before or after [the people] got in [the restroom]?
> A: After. (Camac Dep. at 14, 24).

favor of Nationwide.[11] Said judgment is hereby GRANTED. IT IS SO ORDERED.

11. Nationwide did not specifically ask the Court to grant summary judgment as to the self-defense claim. In its brief, however, Nationwide argues that Hall's self-defense claim is not valid and should therefore not be considered. In light of the purpose of the Motion and the supporting brief, the Court is satisfied that consideration of the self-defense claim is an integral and inseparable part of the Motion for Summary Judgment.