IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| USAA CASUALTY INSURANCE COMPANY, | § § § | No. 273, 2019 |
| Plaintiff Below, Appellant, | § § § § | Court Below: Superior Court of the State of Delaware |
| v. | § § | C.A. No. K18C-05-050 |
| TRINITY CARR, | § § | |
| Defendant Below, Appellee. | § § § | |

Submitted: November 20, 2019
Decided:   January 29, 2020

Before **SEITZ,** Chief Justice; **VALIHURA, VAUGHN,** and **TRAYNOR**, Justices; **SLIGHTS,** Vice Chancellor,* constituting the Court *en Banc.*

Upon appeal from the Superior Court of the State of Delaware. **REVERSED** and **REMANDED.**

Jeffrey A. Young, Esquire, Young & McNelis, Dover, Delaware, *Counsel for Appellant.*

Benjamin C. Wetzel, III, Esquire, Wetzel & Associates, P.A., Wilmington, Delaware, *Counsel for Appellee.*

* Sitting by designation under Del. Const. art. IV § 12.

**TRAYNOR**, Justice:

USAA Casualty Insurance Company ("USAA") sought a declaratory judgment in the Superior Court that it was not obligated to defend, indemnify, or provide insurance coverage for claims made in two lawsuits against Trinity Carr, the daughter of a USAA homeowner's-insurance policyholder. The plaintiffs in the underlying lawsuits sought money damages from Carr and others for personal injuries and wrongful death suffered by Amy Joyner-Francis in a physical altercation—described in both complaints as a "brutal, senseless, forseeable [*sic*] and preventable attack"—between Joyner-Francis and Carr and her friends.[1] USAA argued below, as it does here, that the incident—whether it be labeled an altercation, an attack, or otherwise—was not an "accident" and therefore not a covered occurrence under the policy and that, even if it were, the purported liability is excluded from coverage. The Superior Court disagreed and entered summary judgment in favor of Carr.[2] USAA appealed.

We agree with USAA's interpretation of the relevant policy provisions and therefore reverse the Superior Court's judgment. To label an intentional assault, as the parties agree occurred here, an accident is to disregard the ordinary, everyday meaning of "accident." We thus hold that whether an assault is an "accident" is

---

[1] App. to Opening Br. at A50, A71 (hereinafter "A____").
[2] *USAA Cas. Ins. Co. v. Carr*, 2019 WL 2461708 (Del. Super. Ct. June 12, 2019) (hereinafter "Opinion Below").

determined by the intent of the insured, and not by the viewpoint of the victim. Further, even though Carr may not have intended to cause Francis's death, she certainly intended to cause injury to her. Therefore, the provision that excludes coverage for intended injuries "even if the resulting injury . . . is of a different, kind, quality[,] or degree"—here, death—would bar coverage in any event.

## I. FACTS

In April 2016, non-party Amy Joyner-Francis suffered sudden cardiac death[3] after she was assaulted by Defendant/Appellee Trinity Carr in their high school bathroom. Joyner-Francis's autopsy revealed that she had a "large atrial septal defect and pulmonary hypertension,"[4] which, in addition to the emotional and physical stress from the fight, caused her heart failure. This Court has already analyzed the facts and video evidence related to Carr's criminal proceedings, finding that the assault, which consisted mostly of "awkward punches . . . grappling[,] and kicking" on the floor, was a contributing cause of Joyner-Francis's death, though her death was a result outside the risk of which Carr should have been aware within the meaning of 11 *Del C.* § 263.[5]

---

[3] "Sudden cardiac death is a sudden, unexpected death caused by a change in heart rhythm." *Heart Disease and Sudden Cardiac Death*, WEBMD, https://www.webmd.com/heart-disease/guide/sudden-cardiac-death#1 (last visited Jan. 17, 2020).
[4] *Cannon v. State*, 181 A.3d 615, 619 (Del. 2018). "An atrial septal defect is a birth defect of the heart in which there is a hole in the wall (septum) that divides the upper chambers (atria) of the heart." *Facts about Atrial Septal Defect*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/ncbddd/heartdefects/atrialseptaldefect.html (last visited Jan. 17, 2020).
[5] *Cannon*, 181 A.3d at 625.

After Carr's criminal prosecution, two civil lawsuits were filed in Superior Court by Joyner-Francis's estate and by her parents. Carr demanded a defense and indemnification from Plaintiff/Appellant USAA, which has a homeowner's insurance policy ("Policy") covering Carr's mother and potentially Carr as a resident relative.[6] In response, USAA sought a declaratory judgment that it did not have to cover Carr's litigation defense or indemnify her losses under the Policy. After discovery, USAA moved for summary judgment, which Carr opposed. The Superior Court denied USAA's motion, took Carr's opposition to the summary judgment motion as a cross-motion for summary judgment, and granted that cross-motion. USAA appeals that decision to us.

The Policy provides for defense and indemnification "[i]f a claim is made or a suit is brought against any insured for damages because of bodily injury or property damage caused by an 'occurrence' to which this coverage applies" ("Coverage Clause").[7] "Occurrence" is defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results . . . in . . . bodily injury; or property damage."[8] The Policy also includes an exclusion of coverage for bodily injury "which is reasonably expected or intended by an insured even if the resulting bodily injury . . . is of a

---

[6] Opening Br. at 1.
[7] A111 (internal quotation marks omitted).
[8] A88 (internal quotation marks omitted).

4

different kind, quality[,] or degree than initially expected or intended" ("Exclusion Clause").[9]

On appeal, USAA argues that the Policy does not cover Carr's litigation defense or litigation liabilities because Joyner-Francis's bodily injury—death—was not caused by an "accident," as required for coverage under the Coverage Clause. Alternatively, it argues that, even if Joyner-Francis's death was caused by an "accident," coverage is not available due to the Exclusion Clause. Because we agree with USAA that Joyner-Francis's death was not caused by an accident, and even if were, it would be excluded under the Exclusion Clause, we reverse the Superior Court's judgment.

## III. ANALYSIS

The interpretation of an insurance policy is a question of law and subject to *de novo* review.[10] "[T]he language of an insurance contract is always construed most strongly against the insurance company which has drafted it."[11] But "if the language

---

[9] A112 (internal quotation marks omitted).
[10] *Hudson v. State Farm Mut. Ins. Co.*, 569 A.2d 1168, 1170 (Del. 1990).
[11] *Steigler v. Ins. Co. of N. Am.*, 384 A.2d 398, 400 (Del. 1978).

5

of an insurance contract is clear and unambiguous[,] a Delaware court will not destroy or twist the words under the guise of construing them."[12]

## A. The Policy does not cover Carr for her role in Joyner-Francis's death because the death was not caused by an "accident."

The Policy's Coverage Clause provides for insurance coverage where "bodily injury . . . [is] caused by an [accident]."[13] The parties' dispute concerns the meaning of the word "accident," although they agree that the meaning incorporates some form of unforeseeability.[14] The central questions are "*what* must be unforeseeable?" and "to *whom*?"

This Court most recently grappled with, but did not decide, that question in *Hudson v. State Farm Mut. Ins. Co*.[15] The issue in that case was whether a driver's automobile insurance policy covered injuries sustained by the victim when the driver intentionally drove his car into a telephone pole with the intent to injure the victim. The insurance company argued that the injury was not caused by an accident because it was intentionally inflicted by the driver, and, therefore, the insurer did not need to indemnify the driver for the costs of the injuries. The victim responded that "[a] majority of states have held that whether an assault constitutes an 'accident' within

---

[12] *Hallowell v. State Farm Mut. Auto. Ins. Co.*, 443 A.2d 925, 926 (Del. 1982).

[13] A111 (internal quotation marks omitted). As established above, and undisputed by the parties, the Coverage Clause uses the word "occurrence," which is defined as an "accident."

[14] Opening Br. at 11 (citing Merriam-Webster's Dictionary, which defines "accident" using the word "unforeseen"); Answering Br. at 6 (citing Black's Law Dictionary, which defines "accident" using the words "not expected").

[15] 569 A.2d 1168.

the limits of coverage must be determined from the standpoint of the injured party rather than the insured"—and from the victim's standpoint, the injury is an accident because it was unforeseen and unexpected.[16] Although we noted that many of the cases cited by the victim were inapposite because they "arose from bodily injuries intentionally caused by the employees of the insured rather than the insured himself" and that "at least five jurisdictions have adopted the view that whether injuries were 'caused by accident' must be determined from the standpoint of the insured," we did not decide the case on the basis of whose perspective controls.[17] Instead, we decided the case on public policy grounds, holding that "Delaware's enactment of motor vehicle financial responsibility laws," which require owners of motor vehicles to have insurance, showed a "fundamental purpose" of "protect[ing] and compensate[ing] *all* persons injured in automobile accidents."[18] We therefore ruled against the insurer.

Our trial courts, however, have attempted to answer the question of whether the insured's or the injured person's perspective defines whether an event is an accident in the context of homeowners' insurance. In *State Farm Fire & Cas. Co. v. Hackendorn*,[19] a case involving a victim who was shot by someone intending to

---

[16] *Id.* at 1170.
[17] *Id.* at 1170–1171.
[18] *Id.* (emphasis added).
[19] 605 A.2d 3, 7 (Del. Super. Ct. 1991).

7

shoot someone else, the insurer made an argument similar to the one made by the insurer in *Hudson*—namely, that because the injury was the result of an intentional act, the insurance policy did not provide for a legal defense and indemnification of legal liabilities. The Superior Court noted the lack of Delaware decisions grappling with whether "accidents" are defined by the insured's or the injured person's perspective in the context of homeowners' insurance. Because the court saw the perspective issue as unsettled under Delaware law, it found that the word "accident" was ambiguous.[20] And because ambiguities in insurance contracts are construed against the insurer, the *Hackendorn* court read "accident" from the perspective of the injured rathered than the insured; it therefore ruled against the insurer.[21] In *Camac v. Hall*, the Superior Court followed the *Hackendorn* interpretation, concluding that the insurer must cover the litigation defense and liabilities arising from the insured's punching of a victim in a bar bathroom, because "[i]t is not usual or expected to be struck at such a time."[22]

Here, the arguments are substantially the same as the ones made in *Hudson*, *Hackendorn*, and *Camac*. Accordingly, the Superior Court hewed closely to the reasoning in those cases, and determined that there was a "similar ambiguity in this case with regard to whether the incident in the restroom . . . qualifies as an

---

[20] *Id.* at 8.
[21] *Id.*
[22] 698 A.2d 394, 396 (Del. Super. Ct. 1996).

8

accident."[23] Then, because ambiguities in insurance contracts are construed against the insurer, the court ruled for Carr and found the Coverage Clause applied.

On appeal, USAA disputes, as it did below, that whether an incident is an accident must be determined from the insured's standpoint rather than the victim's. According to USAA, because Carr intended for the fight, which unexpectedly caused Joyner-Francis's death, to happen, the fight was not an accident. Carr, on the other hand, argues that whether an incident is an "accident" must be determined from the perspective of the victim—that is, if the victim did not expect or foresee the incident and injury, it is an accident from the victim's perspective. According to Carr, Joyner-Francis did not expect or foresee her death, so her death must be an accident that is covered by the Policy. But Carr's argument is actually about the extent of the injury—death, as opposed to minor bruising. The Coverage Clause provides that the bodily injury—in this case, Joyner-Francis's death—must be *caused by* an accident, not that the nature or extent of the injury itself must be an accident.[24] Thus, even from Joyner-Francis's viewpoint, the question is whether the

---

[23] *Opinion Below*, 2019 WL 2461708 at *4. As we understand the Superior Court's analysis, the ambiguity had two sources. First, the policy failed to stipulate whether the existence of an accident should be determined from the point of view of the insured or the injured person. Second, the court also noted that, even if the existence of an accident were to be determined from Carr's perspective, the answer would be "complicated"—because even though Carr clearly intended to harm Joyner-Francis, Joyner-Francis's death was just as unexpected to Carr as it was to Joyner-Francis.

[24] The language of the Coverage Clause clearly provides that the accident causes the bodily injury, and not that the extent of the injury is the accident. A111 (covering claims brought because of

events that caused her death were accidental, not whether the death itself was an accident.

We therefore hold, contrary to the Superior Court holdings in *Hackendorn* and *Camac*, that whether an incident is an "accident" in the context of homeowners' insurance policies must be determined from the viewpoint of the insured. To hold otherwise would be to distort the ordinary meaning of the word "accident"[25] and subvert the "well-established common law principle that an insured should not be allowed to profit, by way of indemnity, from the consequences of his own wrongdoing"[26] in a context where no announced Delaware public policy applies.[27] Joyner-Francis's death was caused by a combination of her medical conditions and the "emotional and physical stress from the assault."[28] The medical conditions themselves were not incidents, accidental or otherwise—they were preexisting conditions. And the assault was not an "accident"—as we noted in *Cannon*, video

---

"bodily injury . . . caused by an occurrence," with "occurrence" being defined as an "accident") (internal quotation marks omitted).

[25] Regardless of the dictionary used, the definition of "accident" always includes some element of unforesseeability, lack of intention, or lack of expectation. *See, e.g.*, *accident*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/accident (last visited Jan. 21, 2020) ("an unforeseen and unplanned event or circumstance"); *accident*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/accident (last visited Jan. 21, 2020) ("something that happens unexpectedly and unintentionally"); ACCIDENT, Black's Law Dictionary (11th ed. 2019) ("[a]n unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could not be reasonably anticipated; any unwanted or harmful event occurring suddenly, as a collision, spill, fall, or the like, irrespective of cause or blame").

[26] *Hudson*, 569 A.2d at 1170.

[27] We do not disturb the holding in *Hudson*, which dealt with automobile insurance.

[28] *Cannon*, 181 A.3d at 619.

evidence showed Carr "bragging that [she and her friends] intended to 'get' [Joyner-Francis],"[29] and USAA points out that Carr was the aggressor in the fight.[30] Because, from Carr's perspective, the fight that caused Joyner-Francis's death was not an accident, the Policy does not provide coverage for her litigation expenses or legal liabilities.

**B.     Even if Joyner-Francis's death was caused by an "accident," coverage is excluded under the Exclusion Clause.**

Separately, the Policy's Exclusion Clause provides USAA relief even if the Coverage Clause does not. The Exclusion Clause provides that the Coverage Clause does not apply to bodily injury "which is reasonably expected or intended by any insured even if the resulting bodily injury . . . is of a different kind, quality[,] or degree than initially expected or intended."[31]

The Superior Court found this language to be "ambiguous at best, and utterly confusing at worst."[32] As a result, it construed the provision against the drafter, USAA, and held that USAA had not carried its burden to prove the clause applied.[33] But ambiguity requires that there be two different *reasonable* interpretations of the text in question;[34] the Superior Court's interpretation of the Exclusion Clause renders

---

[29] *Id.* at 618.
[30] Opening Br. 5.
[31] A112.
[32] *Opinion Below*, 2019 WL 2461708, at *7.
[33] *Id.*
[34] *Hallowell*, 443 A.2d at 926 ("[A]n ambiguity exists when the language in a contract permits two or more reasonable interpretations.").

11

the clause entirely inoperative,[35] which cannot have been a reasonable expectation of the parties.[36]  "A textually permissible interpretation that furthers rather than obstructs that [contract's] purpose should be favored."[37]  Thus, "[c]ontracts are to be interpreted in a way that does not render any provisions 'illusory or meaningless.'"[38]  Here, although the Exclusion Clause might have been drafted more clearly, the intent of the Clause is clear:  USAA sought to exclude coverage where the insured intended to cause bodily injury, even if the resulting injury was more or less serious or of a different kind than intended.  Even the court below acknowledged that such a meaning was probably what USAA intended to convey by its language.[39]

And when given this meaning, the Exclusion Clause clearly excludes coverage in this case.  Carr intended some bodily injury; she initiated the assault on Joyner-Francis by "slam[ing]" Joyner-Francis to the ground, yanking her by her hair, and "striking her—[albeit] by and large ineffectually—with loosely-balled fists

---

[35] The court went so far as to conclude that the Exclusion Clause contained a "logical impossibility" because "the bodily injury or property damage for which the exclusion purports to exclude coverage appears to be one and the same with the 'resulting' bodily injury or property damage, but the exclusionary language attempts to draw a distinction between the two." *Opinion Below*, 2019 WL 2461708, at *7.  As set forth above, we do not read it that way.

[36] We have held that an insurance contract should be read to accord with the reasonable expectations of the purchaser so far as the language will permit.  *State Farm v. Johnson*, 320 A.2d 345, 347 (Del. 1974) (quoting *Cooper v. Gov't Emp. Ins. Co.*, 237 A.2d 870, 873 (N.J. 1968)).  And we assume that parties do not expect that the clauses they draft will be surplusage.

[37] ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 63.

[38] *In re Verizon Ins. Coverage Appeals*, 2019 WL 5616263, at *6 (Del. Oct. 31, 2019).

[39] *Opinion Below*, 2019 WL 2461708, at *4 ("The insurer may have intended to state that coverage is excluded where the insured reasonably expects or intends *some* injury or damage, even if the injury or damage that actually results is neither expected nor intended.") (emphasis in the original).

before pulling her again by her hair."[40]  That intention alone triggers the Exclusion

Clause.  That the resulting injury was not initially expected or intended is irrelevant;

indeed, just such a situation is exactly what the Exclusion Clause is meant to exclude.

## IV.  CONCLUSION

For the foregoing reasons, we **REVERSE** the Superior Court's order granting

summary judgment in Carr's favor and **REMAND** for entry of judgment consistent

with this Opinion.

---

[40] *Cannon*, 181 A.3d at 618.