**Tamara BAKER, Respondent Below, Appellant,**

v.

**Trent LONG, Petitioner Below, Appellee.**

No. 222,2009.

Supreme Court of Delaware.

Submitted: Sept. 9, 2009.

Decided: Sept. 25, 2009.

Bruce A. Rogers, Esquire, Bruce A. Rogers, P.A., Georgetown, Delaware, for appellant.

David C. Hutt, Esquire, Wilson, Halbrook & Bayard, P.A., Georgetown, Delaware, for appellee.

Before HOLLAND, JACOBS and RIDGELY, Justices.

HOLLAND, Justice.

The respondent-appellant, Tamara Baker (the "Mother"), appeals from the Family Court's decision to award joint custody of their child to the Mother and petitioner-appellee, Trent Long (the "Father"), pri-

mary placement to be with the Father during the school year.[1] The Mother raises four arguments on appeal. First, she contends that the Family Court abused its discretion by changing primary placement of the minor child to the Father's home after making specific findings of domestic violence and finding the Father to be a perpetrator of domestic violence, in violation of title 13, ch. 7A of the Delaware Code. Second, the Mother contends that the Family Court failed to make specific written findings in support of its decision to award custody or primary residence with the Father, in violation of title 13, section 706A of the Delaware Code. Third, the Mother contends that the Family Court erred in failing to require the Father to complete counseling prior to awarding primary placement to the Father. Fourth, she contends that the Family Court abused its discretion in changing the primary placement of the minor child to the Father's home because the application of the evidence to the statutory factors set forth in title 13, section 722 of the Delaware Code does not support such a finding.

We have concluded that all of the Mother's arguments are without merit. Therefore, the judgment of the Family Court must be affirmed.

### Procedural History

The parties to this action are the biological parents of a minor child, Tyler. The parties were never married. Following their separation, each filed cross petitions for custody.

The parties first began litigating in December 2006 when the Mother filed a Petition for Order of Protection from Abuse against the Father, alleging physical, verbal, mental and emotional abuse, with ac-

---

1. Pseudonyms were assigned on appeal pursuant to Supr. Ct. R. 7(d).

tual physical injury. A temporary Order of Protection from Abuse was issued on December 14, 2006. The parties consented to the entry of an Order of Protection from Abuse ("Order") on December 21, 2006. No criminal charges were filed. The Mother was granted custody of Tyler, and the Father was allowed standard visitation.

On February 22, 2007, the Mother filed a motion to vacate the Order, because the order prohibited the Father from carrying a firearm as required by his employment with the Department of Corrections. The court granted her motion. In April 2007, the Father met his current wife, Nicole. They married on October 25, 2008.

On June 16, 2008, the Father filed a petition for custody with the Family Court. Following unsuccessful mediation, the Family Court entered an interim order for Tyler to remain with the Mother for the remainder of the summer, but switched primary residence to the Father at the commencement of the new school year. Trial on the merits occurred on December 22, 2008. The Family Court issued its final decision on April 1, 2009.

### Family Court Decision

To determine the best interests of the child, section 722(a) provides a list of eight factors that must be considered by the Family Court:

(1) The wishes of the child's parent or parents as to his or her custody and residential arrangements;

(2) The wishes of the child as to his or her custodian(s) and residential arrangements;

(3) The interaction and interrelationship of the child with his or her parents, grandparents, siblings, person cohabiting in the relationship of husband and wife with a parent of the child, any other residents of the household or persons who may significantly affect the child's best interests;

(4) The child's adjustment to his or her home, school and community;

(5) The mental and physical health of all individuals involved;

(6) Past and present compliance by both parents with their rights and responsibilities to their child under § 701 of this title;

(7) Evidence of domestic violence as provided for in Chapter 7A of this title; and

(8) The criminal history of any party or any other resident of the household including whether the criminal history contains pleas of guilty or no contest or a conviction of a criminal offense.[2]

In its final decision, the Family Court reviewed all the evidence relevant to each statutory factor in order to perform a best interest analysis under this section. After the Family Court summarized the testimony of all seven witnesses, and analyzed each of the eight factors, it found that five of the eight factors did not assist it in determining the issue of primary placement, two factors favored primary placement with the Father, and one factor favored primary placement with the Mother.

Specifically, the Family Court found that factors three and four weighed in favor of the Father, and that factor seven weighed in favor of the Mother. Factor three weighed "slightly" in favor of the Father because the Family Court found Tyler's relationship with his maternal grandmother "is not as close as the relationship the child has with [F]ather's extended family." Factor four weighed in favor of the Father because the Family Court found that the

---

2. Del.Code Ann. tit. 13, § 722(a).

Father's home provided Tyler with stability and a regular schedule, and that when Tyler was living with the Mother, she "did not have a stable residence." Factor seven weighed in favor of the Mother, because the Father and the Mother engaged in a verbal and physical confrontation in December 2006, in Tyler's presence, and in which the Father was the primary aggressor.

The rationale for the Family Court's final decision was as follows:

After considering the evidence in this case, in light of the best interests standard, and the factors contained in Section 722 of Title 13 of the *Delaware Code*, it is the court's finding by a preponderance of the evidence that Mother and Father shall share joint custody of Tyler. Primary placement of the child shall be with Father. Mother shall have visitation, as contained in the Family Court Standard Visitation Guidelines, as amended, attached hereto and incorporated herein reference.

While the Court believes that both the Mother and the Father are good parents, and that they are concerned about the welfare of their son, the primary difference in this case is the stability that the Father is able to provide for Tyler in his home. Since Tyler has been with the Father, he has been able to enjoy that stability. Tyler has lived in one home. The Father has frequent contact with his extended family on Father's side. The Father has involved Tyler in appropriate community activities.

The Mother has been unable to provide that stability. Once she and the Father separated, the Mother lived in several different locations. She engaged in a relationship with Dean, and together they lost their housing. Dean moved to Maryland, and the Mother attempted to continue the relationship, taking Tyler back and forth between two states. The Mother was permitted to live in the home of the Father's parents, but she was unable to comply with the rules, leaving Tyler in the home while she visited Dean in Maryland.

While the Mother's living situation now appears to be more stable, the Mother's plans with respect to Tyler's education are incomplete. Placing Tyler with the Mother would involve still another move in this young child's life, and could affect with his participation in community activities.

The court is not pleased that the Father has engaged in acts of domestic violence with the Mother. At least one of the acts occurred in the presence of Tyler. Yet, the court does not believe that Tyler faces danger through this placement with the Father. There is no indication that there have been any other acts of domestic violence involving the Father, either with respect to his relationship with Tyler, with the Mother, or with the Father's current wife. Because the court has found that the Father has engaged in acts of domestic violence, though, the court orders that the Father be required to complete a program of evaluation and counseling designed specifically for perpetrators of family violence and conducted by a public or private agency or certified mental health professional, as defined in Title 13, Section 707A of the *Delaware Code*. The court does not determine that the Father needs to attend alcohol or drug abuse treatment or any other counseling.

It is important that Tyler have extensive contact with the Mother. The attached visitation schedule provides for significant contact, including spending the summers with the Mother.

### Standard of Review

An appeal from a bench trial is upon both the law and the facts.[3] Questions of law will be reviewed on a *de novo* basis.[4] Questions of fact must be affirmed if they are supported by substantial evidence on the record and are the product of an orderly and logically deductive process.[5] If the trial judge has correctly applied the law, the standard of review is abuse of discretion.[6]

### Domestic Violence Definitions

The Mother contends that the Family Court erred as a matter of law by changing primary placement of the minor child to the Father's home after making specific findings of domestic violence and finding the Father to be a perpetrator of domestic violence, in violation of title 13, chapter 7A.[7] The record does not support that assertion at all. The record reflects that, although the Father committed an act of domestic violence, he was not a "perpetrator of domestic violence."

The General Assembly specifically defined the term "perpetrator of domestic violence" in title 13, section 703A(b),[8] as follows:

... any individual who has been convicted of committing any of the following criminal offenses in the State, or any comparable offense in another jurisdiction, against the child at issue in a custody of visitation proceeding, against the other parent of the child, or against any other adult or minor child living in the home: (1) Any felony level offense; (2) Assault in the third degree; (3) Reckless endangering in the second degree; (4) Reckless burning or exploding; (5) Unlawful imprisonment in the second degree; (6) Unlawful sexual contact in the third degree; or (7) Criminal contempt of Family Court protective order based on an assault or other physical abuse, threat of assault or other physical abuse or any other actions placing the petitioner in immediate risk or fear of bodily harm.[9]

Title 13, section 705A provides, in part:

(a) Notwithstanding other provisions of this title, there shall be a rebuttable presumption that no perpetrator of domestic violence shall be awarded sole or joint custody of any child.

(b) Notwithstanding other provisions of this title, there shall be a rebuttable presumption that no child shall primarily reside with a perpetrator of domestic violence.[10]

To properly apply section 705A, it is necessary to refer to the definitions provided by the General Assembly in title 13, section 703A, which distinguish between "domestic

---

**3.** *Levitt v. Bouvier*, 287 A.2d 671, 673 (Del. 1972); *Powell v. Dep't of Servs. for Children, Youth & their Families*, 963 A.2d 724, 731 (Del.2008).

**4.** *Wife (J.F. V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del.1979); *In re Heller*, 669 A.2d 25, 29 (1995).

**5.** *Levitt v. Bouvier*, 287 A.2d at 673.

**6.** *Powell v. Dep't of Servs. for Children*, 963 A.2d at 731; *Solis v. Tea*, 468 A.2d 1276, 1279 (Del.1983).

**7.** Pursuant to title 13, section 722 of the Delaware Code, the Family Court is required to consider eight factors to determine the best interests of the child involved in the dispute. The seventh factor is evidence of domestic violence, as provided for in chapter 7A. Thus, the determination of the best interests of Tyler and application of title 13, chapter 7A were issues before the Family Court throughout the entire course of the trial.

**8.** Del.Code Ann. tit. 13, § 703A(b).

**9.** *Id.*

**10.** Del.Code Ann. tit. 13, § 705A (a)-(b).

violence" and "perpetrator of domestic violence." "Domestic violence," as defined in title 13, section 703A(a): "includes but is not limited to physical or sexual abuse or threats of physical or sexual abuse and any other offense against the person committed by 1 parent against the other parent...."[11]

■ Contrary to the Mother's argument, the Family Court did not find the Father to be a "perpetrator of domestic violence," as that term has been defined by the General Assembly. That determination would have required evidence of either a criminal conviction of one of the offenses enumerated in the statute or a criminal contempt of a Family Court protective order based upon an assault or other physical abuse.[12] A finding only of "domestic violence," however, requires evidence of neither.[13]

In this case, the record reflects only motor vehicle violations by the Father.[14] The PFA Order was issued by consent and expressly stated that it was entered "without a finding of abuse." That Order was later vacated and there was never a finding of contempt. With neither a criminal conviction nor a contempt proceeding to establish that the Father was a "perpetrator of domestic violence," the rebuttable presumption of title 13, section 705A, preventing an award of custody or primary placement, did not apply to the Father.

### Specific Written Findings

In a related argument, the Mother contends that the Family Court failed to make specific written findings in support of its decision to award custody or primary residence with the Father, in violation of title 13, section 706A. Section 706A(b) requires specific written findings by the Family Court when it places primary residence of a child with a party who has committed acts of domestic violence.[15] The Family Court's findings were reported in a sixteen-page, detailed opinion. Consequently, the record reflects that the Family Court complied with the requirements of title 13, section 706A of the Delaware Code.

### Continued Counseling Permitted

In another related argument, the Mother contends that the Family Court violated Delaware law by failing to "require the abuser to complete the counseling prior to placing the child in this environment." Section 707A provides:

> If the Court awards sole or joint custody or primary residence to a parent who has a history of committing acts of domestic violence, that parent shall be ordered to complete a program of evaluation and counseling designed specifically for perpetrators of family violence and conducted by a public or private agency or a certified mental health professional.[16]

This provision unambiguously states that if the Family Court awards primary placement to a parent who has a history of committing acts of domestic violence, the

---

**11.** Del.Code Ann. tit. 13, § 703A(a).

**12.** *See Kuhn v. Danes,* 821 A.2d 335, 338 (Del.Fam.2001). (holding that an act of offensive touching which constitutes an act of "domestic violence" does not rise to the level of defining the Father as a "perpetrator of domestic violence" as defined in Del.Code Ann. tit. 13, § 703A(b)).

**13.** *Kuhn v. Danes,* 821 A.2d at 338.

**14.** The trial judge stated, "The court has reviewed the criminal records of both the mother and the father. The records consist of traffic offenses."

**15.** Del.Code Ann. tit. 13, § 706A.

**16.** Del.Code Ann. tit. 13, § 707A.

parent "shall be ordered to complete a program...." The Mother contends that statute requires the completion of counseling prior to placement. In making that argument, the Mother has conflated the requirements of section 705A (individuals found to be "perpetrators of domestic violence") and section 707A (individuals found to have a history of committing "acts of domestic violence."). Under section 705A, a rebuttable presumption exists that a person who is a perpetrator of domestic violence shall not be awarded sole or joint custody or primary residence. To overcome that presumption, *inter alia*, there must "have been no further acts of domestic violence and the perpetrator of domestic violence has: (1) successfully completed a program of evaluation and counseling designed specifically for perpetrators of family violence and conducted by a public or private agency or a certified mental health professional...."[17] Title 13, section 707A requires that, when the Family Court awards primary residence to an individual with a history of committing acts of domestic violence, "that parent shall be ordered to complete a program of evaluation and counseling designed specifically for perpetrators of family violence and conducted by a public or private agency or a certified mental health professional."[18]

■■■ Completed counseling is a condition precedent to rebutting the presumption found in section 705A, which applies to individuals found to be "perpetrators of domestic violence." On the other hand, section 707A, which instead applies to persons with a "history of committing acts of domestic violence," does not require the counseling to be completed prior to placement.[19] Therefore, the Family Court did not err as a matter of law in applying section 707A and awarding primary placement to the Father before he had completed the counseling program.

### Primary Placement

■■■ Finally, the Mother contends that the Family Court abused its discretion in changing the primary placement of the minor child to the Father's home because the application of the evidence to the statutory factors set forth in title 13, section 722 does not support that result. In determining custody and primary placement of a minor child, title 13, section 722(a) requires the Family Court to find in accordance with the best interests of the child.[20] We have previously held that "[t]he statute anticipates that the Family Court will weigh the amalgam of all of the listed best interest factors that favor one parent against the amalgam of factors that favor the opposing parent *and* all other relevant evidence and only then make an independent determination of the placement that will be in the best interest of the children."[21]

■■■ The Family Court must consider "each of the eight 'best interest' factors ..., none of which is solely determinative."[22] The record demonstrates that the Family Court properly applied the factors to the evidence presented, and reached a

**17.**  Del.Code Ann. tit. 13, § 705A(c).

**18.**  Del.Code Ann. tit. 13, § 707A.

**19.**  *See Kuhn v. Danes*, 821 A.2d 335, 345–46 (Del.Fam.2001); *Marriage of Jeffrey O. and Dorothy B.*, 1998 WL 918822, at *8 (Del.Fam. Aug.28, 1998).

**20.**  Del.Code Ann. tit. 13, § 722(a).

**21.**  *Russell v. Stevens*, 2007 WL 3215667, at *2 (Del. Nov.1, 2007) (quoting *Holmes v. Wooley*, 2002 WL 31355265, at *4 (Del. Oct.17, 2002)).

**22.**  *Russell v. Stevens*, 2007 WL 3215667, at *2 (citation omitted).

logical conclusion. The record reflects no abuse of discretion by the Family Court in awarding primary residential placement of Tyler to the Father.

## *Conclusion*

The judgment of the Family Court is affirmed.