BAY CITY, INC., a Delaware Corporation, Defendant Below, Appellant,
v.
LUCILLE WILLIAMS, Plaintiff Below, Appellee.
No. 746, 2009.
Supreme Court of Delaware.
Submitted: May 12, 2010.
Decided: June 1, 2010.
Karl Haller of Haller & Hudson, Georgetown, Delaware for appellant.
Paul G. Enterline, Georgetown, Delaware for appellee.
Before STEELE, Chief Justice, JACOBS and RIDGELY, Justices.
STEELE, Chief Justice:
Lucille Williams is a tenant of Bay City, Inc. According to her lease, her mobile home requires a federal Housing and Urban Development seal to remain on the leased premises after a transfer. Lucille's daughter wished to be added to the lease  a form of transfer. The trial judge held that the provision requiring a HUD seal arbitrarily and capriciously restricted transfer, and impermissibly discriminated against older homes. Because the HUD seal signifies nothing about the home's safety since the manufacturer affixed it, and HUD does not affix seals to homes manufactured before 1976, we AFFIRM the trial judge's decision.

FACTUAL AND PROCEDURAL HISTORY
Williams owns a 1960 Champion model, 8' x 40' mobile home. She has leased a lot in Bay City Mobile Home Park from the owner and operator, Bay City, since 1971, when she placed her trailer on the premises. Over time, Williams made several additions to her home, nearly doubling its width to 14 feet.[1]
The rental agreement between Williams and Bay City states that in the case of a transfer, the home may remain on the premises only if it meets the community's manufactured home standards. These standards require that the manufacturer have placed a HUD seal on the mobile home at the time of its manufacture in order to certify compliance with the federal guidelines for manufactured homes.[2]
In 2005, Williams' daughter, Mary Beccone, requested that Bay City add her name to Williams's lease. Bay City rejected this application, because the mobile home contained inadequate square footage and lacked a HUD seal. Thus, Williams could not transfer an interest in the mobile home to Beccone, and still remain on the premises.
Williams filed suit in the Superior Court seeking a declaratory judgment permitting a transfer and retention of the mobile home in the park. The trial judge held that both requirements, which prevented Beccone from joining the lease, were arbitrary and capricious. First, he held that the square footage and width requirement violated Delaware's proscription of purely aesthetic considerations in transfer approval determinations. Second, the trial judge held that requiring a HUD seal predominantly veils its true purpose as an age restriction. Bay City appeals from those judgments.

STANDARD OF REVIEW
We review questions of law, including statutory construction and interpretation, de novo.[3] We defer to the trial judge's findings of fact if substantial evidence supports them and they are not clearly wrong.[4]

ANALYSIS
Bay City asserts that the trial judge erroneously invalidated its regulation requiring a HUD seal, because the regulation was not arbitrary and capricious and was specifically authorized by 25 Del. C. § 7020. Bay City argues that the statutory language clearly permits landlords to base transfer restrictions on the 1976 HUD Code. Although Bay City correctly asserts that it may premise transfer restrictions on the 1976 HUD Code, it fails to consider the remainder of § 7020.
As the trial judge stated, § 7020 prohibits landlords from restricting mobile home transfer based on the exclusive or dominant criterion of age. Thus, the HUD Code may not mask an invalid age restriction.
To remain in the park after a transfer, the Bay City regulations require a mobile home to have a HUD seal. At the time of manufacture, the manufacturer affixes a HUD seal at the manufacturing facility, if the mobile home was constructed in accordance with the HUD Code. Mobile homes constructed before HUD Code promulgation, in June 1976, necessarily would not possess a HUD seal.
As the trial judge stated, the HUD seal does not provide ongoing safety assurances. A HUD seal indicates nothing about the mobile home's safety after its manufacture. Thus, a safely maintained mobile home, safely constructed before June 1976, cannot have a HUD seal, while a dangerously deteriorated mobile home safely constructed after June 1976 may well have a HUD seal. Under Bay City's regulation, the former (presumably safer) mobile home could not remain in the park after a transfer, yet the later (presumably unsafe) mobile home could remain after a transfer.
The 34 years since the promulgation of the HUD Code have created enormous potential for dangerous deterioration, about which a HUD seal discloses nothing. This very real possibility renders Bay City's transfer restriction arbitrary and capricious with respect to safety and impermissibly allows the HUD restriction to mask an invalid age restriction.

CONCLUSION
For the foregoing reasons, we AFFIRM the judgment of the Superior Court.
NOTES
[1] At trial, testimony revealed that the current market value of the home was approximately $2,500.
[2] The federal statute, 42 U.S.C.A §5401 (b)(1)-(8), was promulgated to: 1) protect the quality, durability, safety, and affordability of manufactured homes; 2) to facilitate the availability of affordable manufactured homes and to increase homeownership for all Americans; 3) to provide for the establishment of practical, uniform, and, to the extent possible, performance-based Federal construction standards for manufactured homes; 4) to encourage innovative and cost-effective construction techniques for manufactured homes; 5) to protect residents of manufactured homes with respect to personal injuries and the amount of insurance costs and property damages in manufactured housing, consistent with the other purposes of this section; 6) to establish a balanced consensus process for the development, revision, and interpretation of Federal construction and safety standards for manufactured homes and related regulations for the enforcement of such standards; 7) to ensure uniform and effective enforcement of Federal construction and safety standards for manufactured homes; and 8) to ensure that the public interest in, and need for, affordable manufactured housing is duly considered in all determinations relating to the Federal standards and their enforcement.
[3] Del. Bay Surgical Servs. V. Swier, 900 A.2d 646, 652 (Del. 2006); State Farm Mut. Auto. Ins. Co. v. Clarendon Nat. Ins. Co., 604 A.2d 384, 387 (Del. 1992) (quoting Hudson v. State Farm Mut. Ins. Co., 569 A.2d 1168, 1170 (Del. 1990).
[4] Baker v. Long, 981 A.2d 1152, 1156 (Del. 2009); Levitt v. Bouvier, 287 A.2d 671, 673 (Del. 1972).