NEW CASTLE COUNTY COUNCIL, the elected governing body for New Castle County, Theodore W. Ryan, President of County Council, Richard P. Cecil, a member of County Council, J. Robert Woods, a member of County Council, Penrose Hollins, a member of County Council, Plaintiffs,

v.

STATE of Delaware, Robert S. Weiner, defendant as interested party, Stephanie L. Hansen, defendant as interested party, Richard L. Abbott, defendant as interested party, Brian J. Lintz, defendant as interested party, Defendants.

Civ. A. No. 96C–10–045–WTQ.

Superior Court of Delaware, New Castle County.

Argued: Oct. 30, 1996.
Decided: Nov. 1, 1996.

---

Collins J. Seitz and Charles J. Durante, Connolly, Bove, Lodge & Hutz, Wilmington, for Plaintiffs.

Malcolm S. Cobin and C. Drue Chichi, Wilmington, Department of Justice, State of Delaware, for Defendant.

QUILLEN, Judge.

This is the Court's decision on plaintiffs' and defendant State of Delaware's Motions for Summary Judgment.[1] Plaintiffs seek a declaratory judgment from the Court that 70 *Del. Laws* chapters 568 and 569 unconstitutionally shorten the terms of office of members of the New Castle County Council. For the reasons herein stated, plaintiffs' Motion is DENIED and defendant State of Delaware's Motion is GRANTED.

## FACTS

The facts are not in dispute. The plaintiffs are New Castle County Council ("Council"), the elected governing legislative body for New Castle County, Theodore W. Ryan, President of the Council, and Richard C.

Cecil, J. Robert Woods, and Penrose Hollins, each a current member of the Council. In addition to the State of Delaware, the plaintiffs have named as individual defendants, for purposes of this declaratory judgment action, Robert S. Weiner, Stephanie L. Hansen, Richard L. Abbott, and Brian J. Lintz, each of whom is a candidate for an office on the Council.

On July 25, 1996, the Governor signed into law House Bills 667 and 666 as amended by Senate and House Amendment 2 (the "Acts"). As enacted, the Bills are found at 70 *Del. Laws* chapters 568 and 569, respectively. House Bill 667, which became law first and was effective when signed, provides that elected Council members take office on the first Tuesday in November following the general election, instead of the first Tuesday in January following the general election, as was the procedure prior to this amendment of 9 *Del. C.* § 1141.[2] This Act was expressly made "effective for all terms of office that would terminate after the 1996 election." House Bill 667 also provides that, barring "an emergency declared by Governor, the County governing body shall not meet between the general election day and the following Tuesday when the County Council members elected in the 1996 general election shall take office." Thus, under the statute, the newly elected officials are to take office on Tuesday, November 12, 1996. House Bill 667 therefore expressly has the effect of shortening, by approximately eight weeks, the terms of office of the incumbent Council members. The Act does provide, however, that the members whose terms of office are thus shortened will continue to receive "all pay and other benefits" for the eight weeks between the time their successors take office and the previously scheduled end of their

1. The State and the defendant Robert S. Weiner originally filed Motions to Dismiss alleging, *inter alia*, that the New Castle County Council lacked the authority to bring this action. Prior to the institution of this action, Council had not formally met and authorized the suit as in accordance with its own procedures. On October 22, 1996, the Council passed unanimously (7–0) Resolution 245, in which the Council authorized the filing of this action. In light of this, defendants have not pursued the Motion to Dismiss for lack of capaci-

ty to sue on the ground of lack of authority. The defendant Weiner has indicated his willingness to accept the decision of the Court with regard to the merits of this action.

2. House Bill 667 was passed by the House on June 25, 1996 by 40–0 with one Representative not voting and was passed by the Senate on June 26, 1996 by 20–0 with one Senator absent.

term of office.[3]

Plaintiffs Theodore W. Ryan, Richard C. Cecil, and J. Robert Woods were elected to membership on the Council in 1992. Plaintiff Penrose Hollins was elected to membership in 1994. The four year terms of office of plaintiffs Ryan, Cecil, and Woods were scheduled to end, prior to the enactment of House Bill 667, on January 7, 1997, while plaintiff Hollins' term of office was scheduled to end on January 5, 1999. No individual plaintiff at any time has been charged with misconduct in office. The individual plaintiffs are four of the current seven incumbent members of County Council.

The defendants include all of the individual candidates for the two formally contested Council seats in the imminent 1996 election. In particular, defendant Stephanie L. Hansen, who defeated plaintiff Ryan in the September 1996 Democratic primary, is a candidate for the countywide position of President of County Council, as is defendant Richard L. Abbott, the victor in the September 1996 Republican primary. In addition, defendant Robert S. Weiner, who defeated plaintiff Cecil in the September 1996 Republican primary, is a candidate for member of County Council for the Second Councilmanic District, as is defendant Brian J. Lintz, the candidate of the Libertarian Party.[4] None of these individual defendants have taken a position on the pending Motions, and all are apparently willing to accept the decision of the Court with regard to the merits of the action.[5] Thus, the only defendant to appear on the merits of the Motions now pending is the State of Delaware, represented by the Department of Justice.

The second Act involved in the litigation is House Bill 666 as amended by Senate Amendment 1 and House Amendment 2 ("House Bill 666" herein). As noted, it as well became effective law (70 *Del. Laws* 569) on July 25, 1996.[6] House Bill 666 is more complex in detail (covering super majority requirements and reapportionment in particular) but its clear purpose is to enlarge New Castle County Council to thirteen members in the 1998 election, the President's four year (1996–2000) at-large term being preserved and all of the other twelve members to be elected by newly apportioned district voting in 1998, thereby reducing the district councilmanic terms to be elected in 1996 to two years, ending "the first Tuesday in November following the 1998 general election."

Counsel, both in the briefs and at oral argument, discussed the appropriate limits for the Court in any inquiry into legislative motivation. Suffice it to say that the primary purpose of each of the two Bills is patently apparent from the face of each. House Bill 667, as its synopsis expressly states, was designed to eliminate "lame duck sessions of New Castle County Council." House Bill 666 was designed to enlarge New Castle County Council from seven members to thirteen members, thus reducing the number of constituents per member of Council, and to accomplish that objective in 1998.[7]

---

3. The law would eventually affect all seven Council members, either in the 1996–97 cycle or in the 1998–99 cycle. Of the four Council seats on the 1996 ballot, two incumbents (J. Robert Woods, a party plaintiff, and Joseph E. Miro, a nonparty) are unopposed in the general election and will presumably continue in office; the Court suspects they will not seek double pay and other benefits; no practical issues appear to arise from their situation.

4. The Court notes councilmanic is a statutory term, both before and after the enactment of House Bill 666.

5. The defendant Hansen formally filed an answer indicating she is prepared to accept the decision of this Court with regard to the issues addressed by the Complaint.

6. House Bill 666 with Senate Amendment 1 and House Amendment 2 passed the House on June 30, 1996 by 31–8 with two Representatives not voting and passed the Senate on July 1, 1996 by 16–5.

7. To state the obvious, the Court makes in this decision no judgment as to the merits of policy choices made by the General Assembly. As Judge Rodney wrote in *State ex rel. Green v. Collison*, Del.Super., 197 A. 836, 863 (1938):

Any belief that I might, personally, hold as to the advisability or inadvisability of a statute ... has nothing whatever to do with the present matter, and is entirely separate and distinct from its legal aspect.

Obviously, people can debate the most appropriate time for newly elected officials to take office and how many members, in Delaware's layered

Plaintiffs instituted this action seeking a declaratory judgment under 10 *Del. C.* § 6501 that the Acts unconstitutionally remove them from their office, in contravention of the Delaware Constitution. Defendant State of Delaware filed a Motion to Dismiss, which, by virtue of the submission of matters beyond the pleadings, is converted to a Motion for Summary Judgment under Superior Court Civil Rule 56, as required by Rule 12(b). Defendant's Motion argues that the Acts are constitutional and that the County Council and the Council members in their official capacities lack standing to sue because the State has sovereign immunity and because they are asserting only the personal rights of Council members. Defendant also asserts that, if the Court finds the Acts unconstitutional, the unconstitutional provisions are severable.

### DISCUSSION

■ When considering a motion for summary judgment under Superior Court Civil Rule 56, the Court's function is to examine the record to determine whether genuine issues of material fact exist. *Oliver B. Cannon & Sons, Inc. v. Dorr–Oliver, Inc.,* Del.Super., 312 A.2d 322, 325 (1973). If, after viewing the record in a light most favorable to the non-moving party, the Court finds there are no genuine issues of material fact, summary judgment is appropriate. *Id.* The parties agree that the governing facts are not in dispute. This case, therefore, is appropriate for summary judgment and the Court may decide this case as a matter of law.

■ The Court is not going to spend any time on the intricacies of the law of standing. Suffice it to say it is inconceivable to the Court that these plaintiffs, in their individual capacities, in their capacities as County Council members, and the Council as a corporate body generally authorized by law to sue and specially unanimously authorized by its members to pursue this lawsuit, cannot bring this issue, clearly affected with public interest, into Court. If the Court is wrong in

government, the New Castle County Council should have. But the policy decision is clearly

this instinctive judgment and it is absolutely necessary for the four individual plaintiffs to sue in their individual capacities, the Court, on the representations of plaintiffs' counsel at oral argument, deems that amendment accomplished. The plaintiffs have standing. Given the opinion herein, the Court does not reach the severability issue, which the State at oral argument seemed to acknowledge would present great difficulty.

The County and the plaintiff members of County Council claim that House Bills 667 and 666, insofar as they shorten the terms of incumbent New Castle County Council members, constitute an unconstitutional removal from office. The argument as stated in the brief is as follows:

The Delaware constitution permits the removal of an officer who serves a fixed term in only three ways: (1) by the Governor, upon the address of two-thirds of all the members elected to the House of Representatives and the Senate, Art. III, *Del. Const.* § 13; (2) by impeachment by the House and trial by the Senate, Art. VI, *Del. Const.* § 2; and (3) by the Governor, upon conviction of misbehavior in office or any infamous crime, Art. XV, *Del. Const.* § 6. *See State ex. rel Craven v. Schorr,* Del.Supr., 131 A.2d 158, 166 (1957).

In addition to the *Craven* case, reliance is placed on *State ex rel. Green v. Collison,* Del.Super., 197 A. 836, 839, *rev'd on other grounds,* Del.Supr., 2 A.2d 97 (1938). The Superior Court in *Collison* applied the principle of *expressio unius est exclusio alterius,* and held that the constitutional expression of the grounds for removal from public office necessarily excluded any other grounds founded in state statute in the case of a public officer with a fixed term. In reversing, the Supreme Court did not disassociate itself from the reasoning but found that the office in question did not have a fixed term and thus the reasoning was inapplicable.

The plaintiffs have asserted their position in absolute terms. At oral argument, plaintiffs' counsel said, in response to the Court's

one for the General Assembly, not the Courts.

question, that, even if the General Assembly shortened a councilmanic term a single day, it would constitute an unconstitutional removal from office. Plaintiffs say, if the effect of a statute is to shorten a term, the subject matter and intent of the legislation are absolutely irrelevant. Due to incumbency, the General Assembly in 1966, according to plaintiffs, could not accomplish the intent of the two Bills until 1999. Presumably, under the plaintiffs' view, if the 1996 legislative effort fails because of unconstitutionality established in this case, any subsequent action taken by the General Assembly in 1997 could not be effective until 2001 (after the expiration of the terms elected in 1996, which under prior law would expire in January 2001). This draconian "all or nothing" approach is surely enough to give a reasonable person pause.

 There is a general presumption that any act of the General Assembly is constitutional.

> Legislative acts should not be disturbed except in clear cases, and then only upon weighty considerations; a legislative enactment is cloaked with a presumption of constitutionality and should not be declared invalid unless its invalidity is beyond doubt.... Every presumption is in favor of the validity of a legislative act and all doubts are resolved in its favor.... There is a strong presumption of constitutionality attending a legislative enactment which, unless evidence of unconstitutionality is clear and convincing, the court will be reluctant to ignore.

*Wilmington Medical Center v. Bradford,* Del.Supr., 382 A.2d 1338, 1342 (1978) (citations omitted). If there are two reasonable interpretations of a statute, a Court should choose the one which saves it against a constitutional attack. *See, e.g., Mills v. State,* Del.Supr., 256 A.2d 752, 758 (1969); *Collison v. State ex rel. Green,* Del.Supr., 2 A.2d 97, 107 (1938). Our State law pays great deference to the view of the General Assembly on policy choices and that includes the withholding of judicial constitutional oversight of a statutory enactment when the grounds are shaky.

 County Council members are public officers. *See generally State ex rel. Green v. Glenn,* Del.Super., 4 A.2d 366, 367 (1939). Contrary to an assertion in plaintiffs' reply brief, a public office may have either a fixed term *or* an indefinite one.

> A public office is the right, authority, and duty, created and conferred by law, by which, for a given period, *either fixed by law or enduring at the pleasure of the creating power,* an individual is invested with some portion of the sovereign funcions of government, to be exercised by him for the benefit of the public. The individual so invested is a public officer.

*Id.* at 367 (*quoting Meecham on Public Officers* § 1 (1890)) (emphasis added). It is not a requirement that a public officer have a fixed term. The Delaware Secretary of State serves an indefinite term of office at the pleasure of the Governor, *Del. Const.* Art. III, § 10, yet it is beyond argument that the Secretary is a public officer, who notwithstanding an indefinite term, stands second in the line of succession to the powers and duties of the Governor. *Del. Const.* Art. III, § 20.

 Notwithstanding the plaintiffs' position, and even assuming fixed terms, it is hard to view these statutes as attempts to remove a public officer from office. The statutes are not directed against anyone. They are designed as governmental changes of form, to eliminate the lame duck session of Council (thus depriving, in a post-election context, legislative voting power to those rejected or not choosing to run in the most recent election cycle) and to increase the number of councilmanic districts (thus permitting district representatives to serve fewer total constituents and thereby perceptively remain closer to the people represented). However one views these policy changes, they are in a qualitatively different arena in their shortening of councilmanic terms than the directed personal removal requiring "reasonable cause" under Article III, § 13, requiring "treason, bribery or any high crime or misdemeanor in office" under Article VI, § 2, and requiring conviction of "misbehavior in office or any infamous crime" under Article XV, § 6. The context for the Delaware

implied constitutional prohibition on which plaintiffs rely is itself at least somewhat different in quality than an express prohibition against shortening the terms of public officers. *Compare Del. Const.* Art. XV, § 4 which expressly provides that "[n]o law shall *extend* the term of any public officer ..." (emphasis added).

■ The right to create an office must include the right to abolish or modify it. "It is well settled that offices created by the legislature are entirely within legislative control; that the gift of such an office is not a contract. Unless there be some constitutional limitation, such offices may be modified, abridged, or abolished as the legislature may see fit." *State ex rel. McVey v. Burris,* Del.Supr., 49 A. 930, 931 (1901). Other courts have held that so long as the legislation is aimed at the office and not the officeholder, there is no constitutional prohibition against the shortening of a term. *Lanza v. Wagner,* Ct.App., 11 N.Y.2d 317, 229 N.Y.S.2d 380, 384, 183 N.E.2d 670, 673, *app. dism.,* 371 U.S. 74, 83 S.Ct. 177, 9 L.Ed.2d 163, *cert. denied,* 371 U.S. 901, 83 S.Ct. 205, 9 L.Ed.2d 164 (1962).

There is simply no question here that the General Assembly was acting to affect the office, not the officeholder. The Constitution's removal clauses, notwithstanding any arguments by plaintiffs to the contrary, would appear only to restrict the power of the government to remove individual officers from office, not the ability of the General Assembly to abolish or modify the office itself. What the plaintiffs are really complaining about here is the incidental effect that the General Assembly's modest reorganization plan has on them, specifically, a slight adjustment (8 weeks out of 208 weeks) on their time in office. All of this discussion suggests the implied constitutional limitation established by case law ought to be examined within the context of the "transparent devices" involved in those cases.

The shortening of the term of the office of County Council members in this case was done before the September 1996 primary date, before the primary defeats suffered by plaintiffs Ryan and Cecil, and certainly before any activity in the 1998 election cycle.

This was not a revamping of a government commission by a "transparent device" to appoint "Richard Roe" after "John Doe's" removal. *See Craven,* 131 A.2d at 167. Every incumbent officeholder remained free to seek election as a member of County Council. In short, this case involves a governmental change which has an incidental effect on the terms of County Council members. The legislation here completely lacks the arbitrary character denounced in *Craven.* This Court declines to hold every incidental shortening of a term of office contained in governmental structural change constitutes an unconstitutional removal of the incumbent from office.

But, turning to the other side of the coin, it is not here necessary to rule that the incidental shortening of a fixed term does not constitute a removal of incumbents from office. Given the legal heritage in Delaware of strict adherence to the preservation of status in public office, such a ruling may not be desirable and conceivably may be erroneous. Fortunately, the General Assembly by its precise drafting of 9 *Del. C.* § 1141 *in 1966* permits the Court to avoid the issue.

There is an independent reason why these Acts do not constitute an unconstitutional removal from office. The General Assembly in 1966, when it changed the County government from the three member Levy Court to the County Executive and seven member County Council, effectively anticipated questions like the one in issue in this case. The law applicable to the formation and function of the County Council is found at 9 *Del. C.* §§ 1141–1168. Prior to its revision by House Bills 666 and 667, 9 *Del. C.* § 1141 provided for the following makeup of the Council:

> The county government shall consist of seven members. Six of the members shall be elected from councilmanic districts. The seventh member shall be elected at large from New Castle County and shall serve as President of the county government. Unless otherwise provided by law, elected officials of the county governing body shall serve a term of four years, or until their successors have been elected and taken office. An elected official shall take office on the first Tuesday in January following his election.

Prior to amending, Section 1141 expressly stated that *"unless otherwise provided for by law,* elected officials of the county governing body shall serve a term of four years, or until their successors have been elected and take office." 9 *Del. C.* § 1141 (emphasis added). The language used is not totally inflexible. The plain meaning of the pertinent portion of the statute is that these terms of office are four years in length unless the law provides otherwise. It is not quite as plain, however, what "unless otherwise provided for by law" means. The Court must, of course, give effect to every word and phrase of the statute, including this phrase. In using the words "by law," the Court understands the General Assembly as providing that any change to the term of office must be effected in the manner in which statutes are traditionally enacted in this State.

The most logical reading of the old Section 1141 for this case indicates that the General Assembly provided that Council members would serve terms of four years, but reserved for itself some power to change, by law, their terms of office. There is no time limit as to the change by law. The General Assembly effected such a change by law when it amended Section 1141 through House Bills 667 and 666. While it may be true, as argued by plaintiffs, that the primary purpose of the phrase "unless otherwise provided for by law" was to give the General Assembly greater flexibility, presumably both at the time of the 1966 enactment and in the future, to stagger Council members' terms so that reapportionment of all Council districts could occur at the same time, the language simply was not so limited.[8] It cannot be denied that the language of the statute on its face supplies a more general power to affect the terms of office for other reasons. Plaintiffs do not deny this, and only characterize such a facial interpretation as somehow being "unsound." Moreover, if plaintiffs' view that fixed terms can never be reduced is accepted this broader

facial interpretation of the prior statute is the only interpretation of the two argued that enables House Bills 667 and 666 to pass constitutional muster, which the Court, out of respect for a coordinate branch of government, ought to try to accomplish. The Court sees no compelling reason to depart from the express statutory language. The Court in this case does not even have to determine that the reserving language itself is absolute *carte blanche* authority to change terms of office. There are obviously important democratic principles at stake in dealing with the term of elected public officials. But, at the least, the "unless" clause constituted a reservation to make modifying adjustments consistent with a basic pattern of four year terms. This Court holds the General Assembly expressly reserved the power to modify four year terms to accommodate perceived governmental reforms and, consequently, the General Assembly violated no constitutional prohibition against removal from office when it amended Section 1141 through the enactment of House Bills 667 and 666.

To sum up, the Delaware General Assembly, in a proper exercise of its policy judgment, saw fit to enact a legislative plan of modification for the New Castle County Council. That plan evidences a reasonable necessity for shortening the terms of office of all current County Council members in order to accomplish a perceived reform: avoiding lame duck sessions of the Council. Insofar as it is reasonable, the Court should interpret the enabling provision of the prior applicable statute so as to render constitutional the two Acts passed by the General Assembly in 1966 and give effect to the legislation. No reason exists on the facts in this case not to give effect to the facial language of the statute. At the very least, an accurate interpretation of the former 9 *Del. C.* § 1141 requires a holding that it created four year terms of office for County Council members expressly subject to modification to accommodate mod-

---

**8.** It is interesting to note that the drafters of the 1966 legislation to reform the New Castle County government were keenly aware of the problem of incumbent officeholders. Two of the Levy Court Commissioners served the balance of their at-large terms as members of New Castle County Council, a somewhat different position. The for-

mer law, 9 *Del. C.* § 304(c), as found in *Delaware Code Annotated* (1953), contained no reservation for other provisions of law. It is not inconceivable that the very issue in this case played a role in the inclusion of the "unless" clause in the 1966 legislation. Query if the wisdom of the 1966 drafters was retained in the 1996 Acts.

est amending governmental reform and that House Bills 667 and 666 effectively amended Section 1141.

## CONCLUSION

Plaintiffs have standing to challenge the constitutionality of House Bills 667 and 666. The challenged pieces of legislation, 70 *Del. Laws* chs. 568 and 569, as enacted are constitutional. Since the challenged legislation is constitutional as a whole, it is not necessary to address the parties' arguments as to severability. For these and all of the foregoing reasons, Plaintiffs' Motion for Summary Judgment is DENIED and the defendant State's Motion for Summary Judgment is GRANTED. JUDGMENT IS ENTERED IN FAVOR OF ALL DEFENDANTS. IT IS SO ORDERED.