# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

ERIC MONZO AND
DANA SPRING MONZO,

        Plaintiffs,

        v.

NATIONWIDE PROPERTY &
CASUALTY INSURANCE CO.,

        Defendant.

:
:
:
:
:
:
:
:
:
:
:
:

C.A. No. K18C-11-003 NEP
In and for Kent County

Submitted: January 17, 2020
Decided: March 18, 2020

## MEMORANDUM OPINION AND ORDER

Upon Defendant's Motion for Summary Judgment
**GRANTED**

Dana Spring Monzo, Esquire (argued), and Eric J. Monzo, Esquire, Plaintiffs, *Pro se.*

Louis J. Rizzo, Jr., Esquire, and Paul D. Sunshine, Esquire (argued), Reger Rizzo & Darnall LLP, Attorneys for Defendant Nationwide Property & Casualty Insurance Co.

**Primos, J.**

Before the Court is the Motion for Summary Judgment of Defendant Nationwide Property & Casualty Insurance Company (hereinafter "Nationwide") regarding the complaint of Plaintiffs Eric Monzo and Dana Spring Monzo (hereinafter collectively "Plaintiffs"), who seek benefits for alleged property damage under a homeowner's insurance policy with Nationwide (hereinafter the "Policy"). For the following reasons, Nationwide's Motion is **GRANTED**.

## I.   FACTS

### A. The Policy

In 2017, Nationwide issued the Policy to Plaintiffs, providing coverage from June 30, 2017, through June 30, 2018. Under the Policy, Nationwide was to cover, *inter alia*, damage to "other structures on the residence premises."[1]

The Policy lists several exclusions from coverage, including the following:

a) earth movement and volcanic eruption. Earth movement means: earth movement due to natural or unnatural causes, including mine subsidence; earthquake, landslide; mudslide; earth shifting, rising or sinking. . . .

b) water or damage caused by water-borne material. Loss resulting from water or water-borne material damage described below is not covered even if other perils contributed, directly or indirectly to cause the loss. Water and water-borne material damage means:

  (1) flood, surface water, waves, tidal waves, overflow of a body of water, spray from these, whether or not driven by wind.

  (2) water or water-borne material which:

  (a) backs up through sewers or drains from outside the dwelling's plumbing system; or

  (b) overflows a sump pump, sump pump well or other system designed to remove subsurface

---

[1] Policy, Section I – Property coverages, p. B1, Coverage B – Other Structures (emphasis removed).

> water or water-borne material from the foundation area.
>
> (3) water or water-borne material below the surface of the ground, including water or water-borne material which exerts pressure on, seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool, or other structure.[2]

The exclusion provision also contains an Anti-Concurrent Causation Clause (hereinafter the "ACC Clause"), which precludes coverage if an excluded cause and a non-excluded cause combine to cause damage to a property item covered under the Policy.[3]

Despite the broad exclusions for water-related damage, Plaintiffs did have optional coverage under the Policy, under an endorsement labeled "Option R," for "[b]road water back up of sewers or drains."[4] This provision states, in pertinent part,

> [Nationwide] will pay up to the limit of liability, shown on the Declarations for this option, at the time of loss, for direct damage to covered property caused by or resulting from water or water-borne material which:
>
> 1. Backs up through sewers or drains from outside the dwelling's plumbing system; or
> 2. Overflows from a sump pump, sump pump well or other system designed to remove subsurface water or water-borne material from the foundation area. . . .
>
> All other provisions of this policy . . . apply.[5]

---

[2] Policy, Property exclusions, p. D1 (emphasis removed).

[3] "[Nationwide does] not cover loss to any property resulting directly or indirectly from any of the following. Such a loss is excluded *even if another peril or event contributed concurrently or in any sequence to cause the loss." Id.* (emphasis supplied).

[4] Policy, Policy coverage options, p. K6, Option R (emphasis removed).

[5] *Id.* (emphasis removed).

### B. Property Damage and Subsequent Events

Plaintiffs' home is located in Greenville, Delaware. A stream, running parallel to the street and approximately fifty feet from the residence, bisects the property. On July 23, 2017, a storm (hereinafter the "Storm") hit northern Delaware, depositing, in a short period of time, approximately seven inches of rain onto the property. The Storm caused damage to a pedestrian bridge crossing the stream and to a wall running alongside the stream.

On July 25, 2017, Plaintiffs filed a claim through the Policy with Nationwide, claiming damage to the wall and the pedestrian bridge. Plaintiffs engaged Frederick Roland (hereinafter "Roland"), an engineer, to investigate what caused the damage to the pedestrian bridge and the wall, and Nationwide engaged Sinan Jawad (hereinafter "Jawad"), also an engineer, to investigate the source of the damage.

Roland determined that the damage to the pedestrian bridge was caused by "hidden decay below the normal water level," "supporting earth embankments being scoured away during a thunderstorm," "a sudden burst of heavy rain," and "debris from trees whose weight was too much to be borne by the supporting bridge structure,"[6] and that the damage to the wall was caused by "heavy rainfall during a short period of time" and "significant drainage . . . into the drainage system of underground pipes which open into the stream via pipes through the stone wall," which in turn resulted in "a failure of the drainage system" and "a collapse [of the wall] at the area where water was being forced out of the pipes and into the creek."[7] Similarly, Jawad determined that the damage to the pedestrian bridge and the wall resulted from increased flow of the stream caused by heavy rainfall, scouring of the soil that undermined the pedestrian bridge and the wall, and debris from trees.[8]

---

[6] Engineering Report of Frederick S. Roland, P.E., p. 3, ¶ 1.
[7] *Id.* at ¶ 2.
[8] Engineering Report of Sinan S. Jawad, P.E., pp. 2-3.

On November 8, 2017, Nationwide informed Plaintiffs that it was denying their claims for damage to the pedestrian bridge and the wall because the damage was caused by "earth movement" and "water or damage caused by water-borne material," neither of which were covered under the Policy.[9]

On November 1, 2018, Plaintiffs filed the complaint in this action, seeking declaratory and other relief. Plaintiffs argue that they should receive compensation for damage caused by the Storm because the policy provided (1) coverage for "other structures," including the pedestrian bridge and the wall; (2) additional property coverage for biological deterioration and damage clean up;[10] and (3) coverage under "Option R," a provision allowing recovery for damage incurred due to the backup of sewers or drains.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[11] When the movant supports its motion for summary judgment with evidence that there is no genuine issue of material fact,

---

[9] Coverage determination letter dated Nov. 8, 2017, p. 5.

[10] The Policy provides coverage for "[b]iological deterioration or damage clean up and removal." Policy, Section I – Property coverages, Coverage D – Loss of Use, p. B6, ¶ 14. Biological deterioration or damage is damage caused by "fungi, algae, lichens, slime, mold, bacteria . . . and by-products of these organisms." Policy, Definitions, p. A2. Plaintiffs' Complaint seeks coverage under this provision, and Nationwide argues that it is not liable for the damage under this portion of the Policy. Pls.' Compl. at ¶ 29; Nationwide's Opening Br. pp. 18-20. Plaintiffs failed to respond to Nationwide's arguments on this issue in their Answering Brief and did not mention the issue at oral argument, and therefore the Court concludes that Plaintiffs are no longer pursuing their claims under this provision.

[11] Del. Super. Ct. Civ. R. 56(c).

then the burden shifts to the non-moving party to establish that there is a dispute of material fact.[12]

The Court must view the evidence in a light most favorable to the non-moving party.[13] If the Court finds that no issue of material fact exists, and that the moving party is entitled to judgment as a matter of law, then the Court may grant the motion for summary judgment.[14]

## III. DISCUSSION

In Delaware, the interpretation of a contract, including an insurance policy, is a question of law.[15] A court must interpret a contract according to its ordinary meaning when the terms are clear and unambiguous.[16]

An insurance contract is not ambiguous merely because the parties do not agree on its construction; rather, a contract is ambiguous "when the provisions in controversy are reasonably or fairly susceptible to different interpretations or may have two or more different meanings."[17] Furthermore, a court may not use extrinsic evidence to interpret contract language where that language is "plain and clear on its face."[18]

---

[12] *Turner v. Ass'n of Owners of Bethany Seaview Condo.*, 2013 WL 1861930, at *2 (Del. Super. Apr. 26, 2013) (citing *Moore v. Sizemore*, 405 A.2d 679, 680-81 (Del. 1979)).

[13] *Id.* (citing *Matas v. Green*, 171 A.2d 916 (Del. Super. 1961)).

[14] *Id.* (citing *New Castle Cty. Council v. State*, 698 A.2d 401, 404 (Del. Super. 1996)).

[15] *O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 286 (Del. 2001); *Hudson v. State Farm Mut. Auto. Ins. Co.*, 569 A.2d 1168, 1170 (Del. 1990).

[16] *GMG Capital Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 780 (Del. 2012); *Johnston v. Tally Ho, Inc.*, 303 A.2d 677, 679 (Del. Super. 1973).

[17] *O'Brien*, 785 A.2d at 288 (citing *Rhone-Poulenc Basic Chems. Co. v. American Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992)).

[18] *Id.* at 289 (citing *Inter Medical Supplies, Ltd. v. EBI Med. Sys., Inc.*, 181 F.3d 446, 457 (3d Cir. 1999) (internal citations and quotations omitted)).

An insured bears the burden of proving that a claim is covered by a policy.[19] If the insured carries that burden, "the burden shifts to the insurer to prove that the event is excluded under the policy."[20]

### A. Plaintiffs are barred from recovery because of the Policy's "earth movement" and "water or water-borne material" exclusions.

The Court begins with the presumption that the damage to the pedestrian bridge and the wall, which are "other structures," is covered under the Policy if it is not excluded pursuant to the Policy's exclusion provisions, and thus that Plaintiffs have carried their initial burden under the coverage analysis.

At oral argument, Plaintiffs conceded that they are not disputing Roland's findings. Therefore, Plaintiffs agree that the damage to the pedestrian bridge was caused, at least in part, by "supporting earth embankments being scoured away during a thunderstorm" and "debris from trees whose weight was too much to be borne by the supporting bridge structure,"[21] and that the damage to the wall was caused by "heavy rainfall during a short period of time" that drained from the roof area of the house into the underground drainage system, ultimately resulting in "a collapse [of the wall] at the area where the water was being forced out of the pipes and into the creek."[22]

First, while it is true that neither "erosion" nor "scour" are explicitly named as excluded causes within the Policy, both fall within the Policy's "earth movement" exclusion. "Scour" is a term that encompasses "erosion."[23] Moreover, "erosion" is

---

[19] *Tyson Foods, Inc. v. Allstate Ins. Co.*, 2011 WL 3926195, at *6 (Del. Super. Aug. 31, 2011) (citing *E.I. du Pont de Nemours & Co. v. Allstate Ins. Co.*, 693 A.2d 1059, 1061 (Del. 1997)).
[20] *Id.* (citing *State Farm Fire & Cas. Co. v. Hackendorn*, 605 A.2d 3, 7 (Del. Super. 1991)).
[21] Engineering Report of Frederick S. Roland, P.E., p. 3, ¶ 1.
[22] *Id.* at ¶ 2.
[23] *Scour*, Concise Oxford English Dictionary (12th ed. 2011) ("(of running water) erode (a channel or pool)").

a term used to describe a natural process, whether rapid or gradual, that wears away soil.[24] Thus, heavy rainfall and the scouring of the earth caused by that rainfall were "natural . . . causes" that resulted in "movement," *i.e.*, erosion, of "earth" surrounding both the pedestrian bridge and the wall.[25]

Second, the Policy excludes damage caused by "water or water-borne material," *i.e.*, by "flood, surface water . . . [or] overflow of a body of water" or by "water or water-borne material below the surface of the ground."[26] Although the word "rain" is not mentioned in the exclusions, "rain" contributing to a "flood" would certainly fall under these exclusions.[27] Indeed, to conclude that damage by rain is distinct from damage by flood would contort the Policy's language and the ordinary meaning of its terms. Additionally, the "debris from trees" carried by the stream was "water-borne material." Again, it is undisputed, as noted in Roland's report, that a burst of rainfall swelling a stream, "material" carried along in that stream, and water moving "below the surface of the ground," *i.e.*, through the underground drainage system, damaged the pedestrian bridge and the wall.

In summary, the facts are undisputed that the damage to both the pedestrian bridge and the wall were caused by factors that were *not* covered under the Policy, namely, "earth movement" and "water or water-borne material." Moreover, even if non-excluded causes contributed to the damage, coverage is barred under the ACC Clause, which precludes coverage when excluded and non-excluded causes combine

---

[24] *Erosion*, Webster's New College Dictionary (3d ed. 2008) ("[n]atural process, as weathering or abrasion, by which material is eroded"); *erosion*, Johnson's Dictionary of the English Language, in Miniature (19th ed. 1818) ("the act of eating away").

[25] *See* Policy, Property exclusions, p. D1 ("[Nationwide] do[es] not cover loss to any property resulting directly or indirectly from . . . . earth movement due to natural . . . causes, including . . . earth shifting, rising, or sinking.").

[26] *Id.*

[27] *See Kish v. Ins. Co. of N. America*, 883 P.2d 308, 312 (Wash. 1994) ("We believe the average purchaser of insurance would expect that the term 'flood' would encompass rain-induced flood.").

to cause damage. Therefore, Nationwide has carried its burden to show that the Policy exclusions operate to bar coverage.

**B. Plaintiffs are not entitled to coverage under Option R.**

Plaintiffs argue that they should receive coverage under Option R for damage to the "collapsed drainage system" that was part of the wall because the drainage system was damaged by water or water-borne material that backed up through the sewers and drains of their residence.[28]

This argument is unpersuasive. Option R states that "[a]ll other provisions of this policy . . . apply,"[29] and thus must be read in the context of the Policy as a whole.[30] Hence, the ACC Clause applies to the entire Policy, including Option R. Therefore, Plaintiffs are precluded from recovery even if both excluded and non-excluded causes combined to damage the wall, as explained *supra*.

Plaintiffs argue that the ACC Clause does not apply to Option R because "Option R is a bargained for exemption to [the exclusion for damage caused by water or water-borne material]."[31] However, Option R is not a separate contract, but rather an endorsement to the existing policy, and therefore, while it modifies the exclusion for water and water-borne material, the other provisions of the policy, including the

---

[28] Pls.' Answering Br. at 20.

[29] Policy, Policy coverage options, p. K6, Option R.

[30] *See In re Shorenstein Hays-Nederlander Theatres LLC*, 213 A.3d 39, 56 (Del. 2019) ("We interpret contracts as a whole and we will give each provision and term effect, so as not to render any part of the contract mere surplusage, and will not read a contract to render a provision or term meaningless or illusory.") (citing *Osborn ex rel Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010)).

[31] Pls.' Answering Br. at 21.

ACC Clause, apply to it.[32]  Indeed, as noted *supra*, Option R explicitly states that "[a]ll other provisions of this policy . . . apply."[33]

However, even assuming *arguendo* that the ACC Clause does not bar coverage under Option R, the provision does not afford coverage because it applies to damage "caused by . . . water or water-borne material" that "[b]acks up through sewers or drains from outside the dwelling's plumbing system" or "[o]verflows from a sump pump, sump pump well or other system designed to remove subsurface water or water-borne material from the foundation area."[34]  Although Plaintiffs allege that immediately following the Storm, they had to remove water that had backed up into their residence from the septic system, sump pump, and sump pump well and had to use fans to prevent further damage, and that damage to their residence "would have been much worse had the septic system, sump pump, and sump pump well not operated adequately,"[35] they are seeking coverage for damage to the pedestrian bridge and the wall, *not* to their residence.  Moreover, while Roland's report states that water "backed up and resulted in a collapse" and "overflow[ed]" from the roof area of the house into the drainage system, it is clear from reading his conclusions in context that, according to Roland, water "backed up" from the roof of the house,

[32] *See Doylestown Elec. Supply Co. v. Maryland Cas. Ins. Co.*, 1996 WL 34393843, at *5 (E.D. Pa. Dec. 31, 1996) (holding endorsement in policy did not preclude application of ACC clause to damage from "water that backs up from a sewer or drain") (internal quotations omitted).
[33] Policy, Policy coverage options, p. K6, Option R. For the first time at oral argument (*i.e.*, not in their Answering Brief), Plaintiffs argued that there is ambiguity as to whether the "[a]ll other provisions" statement applies to Option R because the title "Deductible" appears a few lines above that statement, and, therefore, the "[a]ll other provisions" statement arguably applies only to the section of Option R addressing the deductible, not to all of Option R.  The Court disagrees and finds that, pursuant to its plain meaning, the "[a]ll other provisions" statement applies to all of Option R (and further that, even if ambiguity exists as Plaintiffs claim as to whether the "[a]ll other provisions" statement explicitly subjects Option R to the ACC Clause, Option R, as an endorsement to the Policy, is nonetheless subject to the other provisions of the Policy, including the ACC Clause).
[34] *Id.* (emphasis removed).
[35] Pls.' Answering Br. at 10.

10

through the underground drainage system, and into the stream, not that it "[b]acked up through sewers and drains from outside the dwelling's plumbing system" or "overflow[ed] from a . . . system designed to remove subsurface water from the foundation area":

> The heavy rainfall during a short period of time caused significant drainage from roof areas of the main house and into the drainage system of underground pipes which open into the stream via pipes through the stone wall. The overflow of the rain drainage caused a failure of the drainage system in that water backed up and resulted in a collapse at the area where water was being forced out of the pipes and into the creek.[36]

In short, given the undisputed facts in the record, Plaintiffs are unable to carry their burden to show that they are entitled to coverage under Option R.

## C. Plaintiffs' additional arguments in opposition to Nationwide's Motion for Summary Judgment are rejected.

Plaintiffs argue that Nationwide's Motion for Summary Judgment should be denied as premature because discovery is incomplete. This argument is unpersuasive because a party may move for summary judgment "at any time."[37] Furthermore, the Court has sufficient facts enabling it to render an informed decision. Therefore, Nationwide's Motion is not premature.

Plaintiffs also argue that the Policy must be construed against Nationwide because Nationwide drafted it. In support of this argument, Plaintiffs repeatedly point to extra-contractual negotiations between the parties. However, the Court may

---

[36] Engineering Report of Frederick S. Roland, P.E., p. 3, ¶ 2.

[37] Super. Ct. Civ. R. 56(b) ("A party against whom a claim, counterclaim or crossclaim is asserted or a declaratory judgment is sought may, at any time, move, with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof . . . .").

11

consider these negotiations only if the Policy's language is ambiguous.[38] Here, the Policy's terms are clear on their face, and this Court can determine the meaning of the Policy provisions at issue based solely on "the simple facts on which, from the nature of language in general, its meaning depends."[39]

Plaintiffs cite *Equitable Trust Co. v. O'Neill* in support of their argument that the Court should consider the parties' extra-contractual negotiations, and specifically the statement that "[t]he paramount rule for the interpretation of covenants is so to expound them as to give effect to the actual intent of the parties. . . . [I]n determining that intention, the entire context of the covenant is to be considered."[40] However, Plaintiffs have taken this statement out of context, as the immediately preceding sentence declares, "where the language of a covenant is unambiguous, clear, and specific, the rule, similar to that adopted in the construction of statutes, is that *no room is left either for interpretation or for construction*."[41] Therefore, *Equitable Trust Co.* is inapposite to Plaintiffs' contentions, and their argument is rejected.

## IV. CONCLUSION

Plaintiffs are not entitled to coverage for the damage to the pedestrian bridge and the wall because the factors that caused the damage were excluded under the

---

[38] *See O'Brien*, 785 A.2d at 289 ("[E]xtrinsic evidence is not to be used to interpret contract language where that language is plain and clear on its face.") (citing *Inter Medical*, 181 F.3d at 457 (internal citations and quotations omitted)).

[39] *Rhone-Poulenc*, 616 A.2d at 1196. Thus, the specific allegation that Nationwide's agent, Matthew Papa, conceded that the loss was covered cannot be considered absent ambiguity in the Policy. Furthermore, Papa's neutral statement ("it sounded like . . . coverage could potentially be afforded," Pls.' Answering Br. at 17-18), was neither an affirmative nor definitive statement that coverage was available under the Policy.

[40] *Equitable Trust Co. v. O'Neill*, 420 A.2d 1196, 1200 (Del. Super 1980)).

[41] *Id.*; *see also Town of Cheswold v. Central Delaware Business Park*, 188 A.3d 810, 820 (Del. 2018) ("While we have recognized that contracts should be read in full and situated in the commercial context between the parties, *the background facts cannot be used to alter the language chosen by the parties within the four corners of their agreement*.") (citations and quotations omitted) (emphasis supplied).

Policy. Moreover, even if some non-excluded factors also contributed to the damage, Plaintiffs are nonetheless barred from coverage because of the Policy's ACC Clause.

**WHEREFORE**, for the foregoing reasons, Nationwide's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

_____/s/ Noel Eason Primos_____
Judge

NEP/wjs
*Via File & ServeXpress*
oc:   Prothonotary
       Counsel of Record
       file